**ATLANTIC & GULF STEVEDORES, INC., Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, et al., Respondents.**

No. 75–1810.

United States Court of Appeals, Third Circuit.

Argued April 6, 1976.
Decided June 23, 1976.

**604**

Clayton H. Thomas, Jr., Marshall, Dennehey & Warner, Philadelphia, Pa., for petitioner.

William J. Kilberg, Sol. of Labor, Laurie M. Streeter, Associate Sol., Harry L. Sheinfeld, Atty., U. S. Dept. of Labor, Washington, D. C., for Director, Office of Workers' Compensation Programs.

Bert E. Zibelman, Freedman, Borowsky & Lorry, Philadelphia, Pa., for respondent Mary Aleksiejczyk.

Before BIGGS, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

In this petition to review an order of the Benefits Review Board,[1] Atlantic & Gulf Stevedores, Inc., a statutory employer under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50, seeks to set aside (1) the decision of the Administrative Law Judge that the death of the claimant's husband was work-related, and (2) the decision of the Benefits Review Board modifying the decision of the Administrative Law Judge that the employer's liability be limited, pursuant to § 8(f) of the LHWCA, 33 U.S.C. § 908(f), to 104 weeks' compensation. The claimant, a widow of a longshoreman, resists the first aspect of this petition. The Director of the Office of Workers' Compensation Programs, Department of Labor, resists the second. We deny relief with respect to the first claim, but grant the petition for review with respect to the second.

On December 16, 1972 Stanley Aleksiejczyk, a longshoreman hatch boss, collapsed and died of heart failure aboard the SS Export Adventurer. Shortly after his death his widow, Mary Aleksiejczyk, filed a claim for death benefits under the LHWCA. Atlantic & Gulf opposed the claim, contending that the fatal heart attack was not work-related. The employer also maintained that if it was liable for death benefits, that liability was, by virtue of § 8(f), limited to 104 weeks' compensation. Any benefits in excess of 104 weeks were said to be chargeable to the Special Fund maintained in the Treasury of the United States pursuant to § 44 of the LHWCA, 33 U.S.C. § 944, because at the time of his death Aleksiejczyk was suffering from a previous

---

1. The Benefits Review Board was created pursuant to the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L. No. 92–576, § 15(a), 86 Stat. 1261– 62, 33 U.S.C. § 921(b). The Board is authorized to hear and determine appeals by parties in interest from decisions of Administrative Law Judges respecting claims for compensation.

disability. Both issues were litigated before an Administrative Law Judge, who concluded that the fatal heart attack was work-related and that the decedent was suffering from a previous disability within the meaning of § 8(f). The Director, Office of Workers' Compensation Programs, filed a timely notice of appeal and petition for review, as a party in interest adversely affected or aggrieved, to the Benefits Review Board. *See* 33 U.S.C. § 921(b)(3); 20 C.F.R. § 802.201(a) (1975). That petition for review did not put in issue the finding of the Administrative Law Judge that Aleksiejczyk's fatal heart attack was work-related, but only the finding that the Special Fund was liable for payments of death benefits extending beyond the 104th week. Atlantic & Gulf did not appeal to the Benefits Review Board. The Board, without considering whether the employee's death was work-related, held that the employer was liable for the entire amount of compensation due Mrs. Aleksiejczyk.

I. *Atlantic & Gulf's petition to review the determination that death was work-related.*

Mrs. Aleksiejczyk contends, and we think rightly so, that we cannot grant relief from the finding that her husband's death was work-related. The statute granting us jurisdiction over this matter provides that

> [a]ny person adversely affected or aggrieved by a final order of the [Benefits Review] Board may obtain a review of that order in the United States court of appeals . . . by filing . . . a written petition praying that the order be modified or set aside.

33 U.S.C. § 921(c).

Certainly the employer is a party aggrieved by the Board's order, since the order increased its liability. But it is the Board's order that we review, not the entire case. The Board's order in this instance did not deal with the compensability of the death. It dealt only with the allocation of liability between the employer and the Special Fund. The statute provides that

> [a] compensation order shall . . . unless proceedings for the suspension or setting aside of such order are instituted [before the Board,] become final at the expiration of the thirtieth day thereafter.

33 U.S.C. § 921(a).

Since the decision of the Administrative Law Judge directed Atlantic & Gulf to pay 104 weeks of compensation, the employer was a party affected or aggrieved by that order. Thus the company, as well as the Director, could have appealed to the Benefits Review Board. 20 C.F.R. § 802.201(a) (1975). Had it done so, the Board would have been afforded the opportunity of considering the contention that the fatal heart attack was not work-related. This case is distinguishable from those instances where the employer prevails on all issues in the proceedings before the Administrative Law Judge, and thus never is aggrieved by an order. Such an employer could not, under the statute and the regulations, appeal; nevertheless, it should be permitted to assert any ground which would justify the denial of relief, even if an intermediate tribunal in the administrative process did not pass on the issue in the first instance.[2] But where, as here, the administrative appellate process afforded the opportunity for review of the contention sought to be raised, a reviewing court should not consider it in the absence of exhaustion of that opportunity.

The employer points out that under the statute the record on which the Board acts is that made before an Administrative Law Judge, and that its review is by the same "substantial evidence in the record considered as a whole" standard of review which we would employ. 33 U.S.C.

**2.** Prior to the 1972 amendments, review of initial administrative compensation decisions was in the district court. It has long been the law that an appellate court can affirm a lower court judgment on arguments not presented below. *In re Trimble Co.*, 479 F.2d 103 (3d Cir. 1973); *Lanova Corp. v. National Supply Co.*, 116 F.2d 235 (3d Cir. 1941). Our review of orders of the Benefits Review Board, which performs the same function as the district court in LHWCA cases, should be no different.

§§ 921(b)(3), (c); 5 U.S.C. § 706(2)(E). *See* H.R.Rep. No. 92–1441, 92d Cong., 2d Sess., 1972 U.S.Code Cong. & Admin.News, p. 4709 (suggesting that judicial review is by the substantial evidence standard). But while permitting a bypass of the Board would not interfere with the administrative development of a factual record, and while our interpretation of the law must ultimately guide the Board, we think that it is nevertheless proper to insist upon exhaustion of the administrative remedy of appeal to the Board. It may be anticipated that a party aggrieved by an action of an Administrative Law Judge will in many instances find corrective action at the Board level, thus obviating the need for judicial review. *See, e. g., Christian v. New York Department of Labor,* 414 U.S. 614, 622, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974). Moreover, 33 U.S.C. § 921(a) evinces a strong interest in prompt finality of compensation claims. Unlike many other instances in which failure to exhaust remedies results in the total and permanent loss of rights, the LHWCA contains a provision for the modification of awards in certain cases. *See* 33 U.S.C. § 922; *O'Keefe v. Aerojet-General Shipyards, Inc.,* 404 U.S. 254, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971). This mitigates whatever hardship may attach to the requirement that the exhaustion doctrine must be observed in longshoremen's cases. We thus hold that a party in interest affected or aggrieved by a decision or order of an Administrative Law Judge in a compensation proceeding under the Act, who fails to appeal the order complained of to the Benefits Review Board within the time permitted by 33 U.S.C. § 921(a) and who thereby deprives the Board of the opportunity to pass upon an issue, may not raise that issue on a petition for review in this court. We proceed on the same assumption as did the Benefits Review Board: that the order directing payment of death benefits became final thirty days after it was filed.

II. *Atlantic & Gulf's § 8(f) contention.*

■ When Congress enacted the LHWCA in 1927, it included provisions, copied from the workmen's compensation law of New York, *see* H.R.Rep. No. 1190, 69th Cong., 1st Sess. 2 (1926), dealing with what is commonly called the second-injury problem. The problem is that a person with a given partial disability might, when injured, become totally disabled as a result of the combined disabling effects of the two injuries. The classic example is the one-eyed man who in a work-related incident loses a second eye. *See, e. g.,* Hearings on S. 3170 Before the House Comm. on the Judiciary, 69th Cong., 1st Sess. 208 (1926). Because the second injury produces a condition of total disability, the employer at that time would ordinarily be liable for full compensation. This result was thought to be unfair, both to handicapped workers who would be subjected to employment discrimination out of fear of excessive potential liability, and to employers who did hire handicapped workers. The result was special statutory treatment for second-injury disabilities, in which the employer's liability was limited, but full compensation would be paid out of a special fund to which all employers made some contribution. The origin and purpose of the second-injury special fund provisions are explained in the leading case of *Lawson v. Suwannee Fruit & Steamship Co.,* 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1947). The argument was made in *Lawson* that the second-injury provision in § 8(f) of the Act as originally drafted was limited in application to instances where the first disability was the result of an occupational injury. The theory advanced was that the words "previous disability" in § 8(f) cross-referenced to the definition of "disability" for purposes of compensation appearing in § 2(10) of the Act, 33 U.S.C. § 902(10). The Supreme Court, looking to the obvious purpose of § 8(f)—to encourage the hiring of handicapped workmen and protect employers who did so—held that "previous disability" meant disability in fact, not disability as defined for purposes of compensation.

■ In 1972 the statute underwent extensive revision, and § 8(f) was not spared. As originally enacted the operative provision read:

(f) Injury increasing disability: (1) If an employee receive an injury which of itself would only cause permanent partial disability but which, *combined with a previous disability*, does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury: Provided, however, That in addition to compensation for such permanent partial disability, and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid the remainder of the compensation that would be due for permanent total disability. Such additional compensation shall be paid out of the special fund established in section 44.

44 Stat. 1429 (emphasis supplied). In the 1972 amendments § 8(f) was changed to read:

(f) Injury increasing disability: (1) In any case in which an employee *having an existing permanent partial disability* suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provisions of subdivision (c)(1)–(20) of this section, the employee is totally and permanently disabled, and the disability is found to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater. In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide in addition to compensation under paragraphs (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only. If following an injury falling within the provisions of subdivision (c)(1)–(20) of this section, the employee has a permanent partial disability and the disability is found not to be

due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater.

33 U.S.C. § 908(f)(1) (emphasis supplied). Part of the language in the revised § 8(f) was added in order to conform the section to the new method of calculating benefits. Those additions do not here concern us. What is of concern is whether Congress intended to change the law as interpreted in the *Lawson* case when it substituted the words "existing permanent partial disability" for the words "previous disability". The scant legislative history that is available suggests that no such change was intended. The House Report on the 1972 amendments refer to the second injury problem as follows:

Injury Following Previous Impairment

The bill amends section 8(f) of the Act (Section 9 of the bill) in order to limit the burden on employers in so-called second injury cases. Many employers have an inaccurate impression regarding the liabilities for workmen's compensation when they employ handicapped workers. It is unfortunately a widespread belief that an employer is subjected to burdensome compensation costs where a handicapped worker receives an injury at the new place of employment. The provision in the bill makes clear that the employer's responsibility for the subsequent or second injury is limited to the scheduled award for the second injury or 104 weeks, whichever is greater. The remaining obligation to pay that employee where he is totally or partially disabled will fall upon the special funds existing under Section 44 of the Act. This method of spreading the risk among all employers is intended by the committee to encourage the employment of handicapped workers.

H.R.Rep. No. 92–1441, *supra,* 1972 U.S.Code Cong. & Admin.News at 4705–06. The

Benefits Review Board's opinion concluded, as we do, that despite the change in language Congress intended to retain the nontechnical § 8(f) concept of disability explained in *Lawson.*

The Administrative Law Judge found that prior to his fatal heart attack, Aleksiejczyk was suffering from diabetes mellitus, labile hypertension and cardiac arrhythmia, that a person with such a condition is predisposed to heart attacks, and that the employer was aware of decedent's medical problems. The judge concluded that Aleksiejczyk was suffering from a "previous disability" within the meaning of § 8(f). The Benefits Review Board reversed this finding, for two reasons.

■ First, the Board acknowledged that implicit in the Administrative Law Judge's opinion was a finding that the previous disability contributed to the fatal heart attack, but held that there was no evidence in the record to support a conclusion that death was not due solely to acute myocardial infarction suffered by the decedent. That holding places in focus the difference in functions between the Benefits Review Board and other administrative agencies. Unlike boards which can, on the record developed before an Administrative Law Judge, make independent factual determinations,[3] the Benefits Review Board is restricted to substantial evidence review. 33 U.S.C. § 921(b)(3). If in reviewing the Administrative Law Judge's decision it departs from that legal standard, we must reverse. *Presley v. Tinsley Maintenance Service,* 529 F.2d 433, 436 (5th Cir. 1976).

■ In this case the Board did depart from the substantial evidence scope of review when it ignored the opinion of Dr. Edward Viner that Aleksiejczyk's condition, coupled with some degree of arteriosclerotic heart disease, caused death sooner than would otherwise occur. The Board also ignored the testimony of Dr. Bernard Segal that diabetes magnified the risk of coronary heart disease by as much as a factor of 4; that Aleksiejczyk had diabetes, that it contributed to coronary arteriosclerosis, and that coronary arteriosclerosis caused the fatal heart attack. There is substantial evidence in the record as a whole supporting the Administrative Law Judge's finding of fact that the previous disability contributed to the fatal heart attack.[4] *Cf. Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Under the statute that finding of fact is conclusive on the Benefits Review Board. 33 U.S.C. § 921(b)(3).

■ As an additional ground for reversing the Administrative Law Judge's § 8(f) determination, the Board held that before a physical disability qualified under § 8(f) it must be an "economic disability." Because there was no evidence in the record that Aleksiejczyk's prior medical history impaired his earnings capacity, it concluded that he did not suffer from a § 8(f) previous disability. In this determination the Board decided a question of law, which we review for legal error. It purported to find authority for the "economic disability" construction in Judge Bazelon's opinion in *American Mutual Insurance Co. v. Jones,* 138 U.S.App.D.C. 269, 426 F.2d 1263 (1970).

---

**3.** Unless the organic agency act is to the contrary, the review of initial decisions of Administrative Law Judges by the administrative agencies is governed by § 8 of the Administrative Procedure Act, 5 U.S.C. § 557. Section 557(b) provides: "On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision . . . ."

**4.** The Director concedes in his brief that the acceleration or aggravation of a preexisting heart condition by an employment-related event that produces disability is a compensable injury under the LHWCA. *See, e. g., Canadian Gulf Line, Ltd. v. Shea,* 404 F.2d 24 (5th Cir.

1968) (per curiam); *J. V. Vozzolo, Inc. v. Britton,* 126 U.S.App.D.C. 259, 377 F.2d 144 (1967); *Hancock v. Einbinder,* 114 U.S.App.D.C. 67, 310 F.2d 872 (1962); *Vinson v. Einbinder,* 113 U.S.App.D.C. 246, 307 F.2d 387 (1962), *cert. denied,* 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963); *Mississippi Shipping Co. v. Henderson,* 231 F.2d 457 (5th Cir. 1956); *Crescent Wharf & Warehouse Co. v. Cyr,* 200 F.2d 633 (9th Cir. 1952); *Hampton Roads Stevedoring Corp. v. O'Hearne,* 184 F.2d 76 (4th Cir. 1950). Thus there is no question that some source, either the Special Fund or the employer, is liable for death benefits after the 104th week.

That opinion contains the statement that "[t]he Act makes clear that 'disability' is an economic and not a medical concept." *Id.* at 1265 (footnote omitted). In relying upon that statement in this § 8(f) case, the Board has simply ignored the contextual setting in which it was made. In the *Jones* case the court reversed the denial of compensation benefits, and was not presented with the problem of the liability of the Special Fund. *See also Nardella v. Campbell Machine, Inc.*, 525 F.2d 46 (9th Cir. 1975). In the compensation context, the quoted language in *Jones* is an unexceptionable proposition. But if it were to be applied for the purpose of overcoming the liability of the Special Fund, it would defeat the very purpose of § 8(f). Indeed, that section would be transformed into a veritable Catch-22. Any employer who in reliance on § 8(f) hired a disabled person would immediately lose the statutory limitation on his liability, since upon hiring a handicapped worker any preexisting economic disability would terminate. The result is, of course, absurd, and is inconsistent with the policy objectives discussed in the *Lawson* case.

▋▋ The Director urges that, even if it is assumed that Aleksiejczyk was suffering from a previous disability when he was hired by Atlantic & Gulf, that disability was not manifest to the employer. The courts have adopted a "latent-manifest" test for determining when an employer will receive the benefit of § 8(f) treatment. Strong policy considerations dictate that only those employers who hire the handicapped with knowledge of their disabilities qualify for limited liability. The latent-manifest test is one method for separating eligible from ineligible employers. In view of the difficulty of proving actual knowledge of a disability, the test is ordinarily an objective one. Conditions that are latent rather than manifest to a prospective employer do not qualify as § 8(f) disabilities.[5] If this court determines that Aleksiejczyk's medical history was latent, the Board's order finding against Atlantic & Gulf on the § 8(f) issue must be sustained.

▋ The Administrative Law Judge found that the employer was aware of the medical problems of the decedent. That finding is supported by substantial evidence in the record as a whole. While the Board did not explicitly pass on the "latent-manifest" contention when it reversed on other grounds, there is no point in remanding for Board consideration of the contention since on this record an affirmance of the Administrative Law Judge's finding of fact is required as a matter of law.

In summary, we conclude that the employer's petition for review of the Board's order must be granted, and the Board's order modifying the decision and order of the Administrative Law Judge must be set aside. 33 U.S.C. § 921(c).

III. *Attorney's fees.*

▋ The 1972 amendments to the LHWCA made a major change in § 28 of the Act, 33 U.S.C. § 928, which deals with attorney's fees. As amended, § 28 authorizes the assessment of such fees against employers in cases where the existence or extent of liability is controverted and the claimant succeeds in establishing liability or increasing compensation in formal administrative or judicial proceedings. The statute now requires us to fix such fees.[6] This is

---

5. *See, e. g., Dillingham Corp. v. Massey,* 505 F.2d 1126 (5th Cir. 1974) (per curiam); *American Mutual Insurance Co. v. Jones,* 138 U.S. App.D.C. 269, 426 F.2d 1263 (1970); *Boyd-Campbell Co. v. Shea,* 254 F.Supp. 483 (S.D. Tex.1966); *United States Fidelity & Guaranty Co. v. O'Keefe,* 240 F.Supp. 813 (S.D.Fla.1962).

6. 33 U.S.C. § 928(c) provides:
 (c) In all cases fees for attorneys representing the claimant shall be approved in the manner herein provided. If any proceedings are had before the Board or any court for review of any action, award, order, or decision, the Board or court may approve an attorney's fee for the work done before it by the attorney for the claimant. An approved attorney's fee, in cases in which the obligation to pay the fee is upon the claimant, may be made a lien upon the compensation due under an award; and the deputy commissioner, Board, or court shall fix in the award approving the fee, such lien and manner of payment.

the first case in which this circuit has had to consider the attorney's fee provisions of the amended statute, although other courts of appeals have previously done so.[7] Fees were awarded by the Administrative Law Judge, and were not the subject of review before the Board or here.[8]

The statute does not enlighten with respect to the standards that should guide us in fixing the amount of a fee, other than directing us to award "a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid . . . ." 33 U.S.C. § 928(b). In this instance the employer in the petition for review resisted the entire award and the claimant successfully urged that it had become final. Under these circumstances, an award of counsel fees is clearly appropriate.

 Since this is the first case in which we have been called upon to fix the amount of an award of counsel fees under the 1972 amendments, we deem it appropriate to announce for future guidance of the bar the procedure we propose to follow. Because fees are awarded against an employer only in cases where the claim has been resisted and the claimant prevails, we will determine in connection with consideration of the merits of the appeal whether or not an award will be made. Thereafter we will

consider an application by motion to the same panel which heard the appeal, on notice to the employer, supported by an affidavit setting forth those considerations which claimant's attorney believes should govern the amount to be awarded. The employer will be afforded an opportunity to respond by brief, and by affidavit if it deems such response appropriate. Ordinarily, the panel will determine the amount of the award on these papers, but it may by order in appropriate cases determine to hear argument. The affidavit in support of a fee application should conform as closely as possible to the criteria for the award of attorney's fees which we articulated in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) and its offspring.[9] Disclosure of the hours devoted to each category of work in connection with the appeal and the reasonable hourly rate for the person performing the work is an essential element of every application. We also call counsel's attention to the provisions of 33 U.S.C. § 928(e)[10] requiring judicial approval for any arrangement for the sharing of fees. If there is any such arrangement, it should be disclosed in the application.

By delaying the determination of the amount of the award until after our decision has been announced we will be in a

7. *See, e. g. Presley v. Tinsley Maintenance Serv., supra; Offshore Food Serv., Inc. v. Benefits Review Board*, 524 F.2d 967 (5th Cir. 1975) (per curiam); *Dillingham Corp. v. Massey*, 505 F.2d 1126 (9th Cir. 1974) (per curiam); *Overseas African Constr. Corp. v. McMullen*, 500 F.2d 1291 (2d Cir. 1974).

8. The award of fees at the administrative agency level is governed by 20 C.F.R. §§ 802.203, 702.134 (1975). *See Matthews v. Walter*, 168 U.S.App.D.C. 27, 512 F.2d 941, 946 (1975).

9. *See In re Meade Land & Dev. Co.*, 527 F.2d 280 (3d Cir. 1975); *SEC v. Aberdeen Sec. Co.*, 526 F.2d 603 (3d Cir. 1975); *Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir. 1975); *Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3d Cir. 1974). The Secretary of Labor suggests the following standards:

The application shall be supported by a complete statement of the extent and character of the necessary work done. Any fee approved shall be reasonably commensurate

with the actual necessary work performed, and shall take into account the capacity in which the representative has appeared, the amount of benefits involved and the financial circumstances of the claimant. No contract for a stipulated fee or for a fee on a contingent basis shall be recognized.

20 C.F.R. § 702.132 (1975).

10. 33 U.S.C. § 928(e) provides:

(e) Any person who receives any fees, other consideration, or any gratuity on account of services rendered as a representative of a claimant, unless such consideration or gratuity is approved by the deputy commissioner, Board, or court, or who makes it a business to solicit employment for a lawyer, or for himself in respect of any claim or award for compensation, shall upon conviction thereof, for each offense be punished by a fine of not more than $1,000 or by imprisonment for not more than one year, or by both such fine and imprisonment.

position to be fully informed of all work involved in the appeal, including time spent in preparation for and participation in oral arguments.

## CONCLUSION

The petition to review the determination that Aleksiejczyk died of a work-related injury will be denied. The petition to review the order of the Benefits Review Board modifying the order of the Administrative Law Judge limiting the employer's liability to 104 weeks and charging the excess to the Special Fund will be granted and that order set aside. An attorney's fee chargeable against the employer will be awarded in an amount to be fixed on motion to this court in conformance with this opinion.