**DULUTH, MISSABE AND IRON RANGE RAILWAY COMPANY, Petitioner,**

v.

**U. S. DEPARTMENT OF LABOR et al., Respondents.**

No. 76–1586.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1977.

Decided April 18, 1977.

William P. O'Brien, Duluth, Minn., for petitioner.

Harry L. Sheinfeld, U. S. Dept. of Labor, Washington, D. C., for respondents; William J. Kilberg, Sol. of Labor, Laurie M. Streeter, Associate Sol., Washington, D. C., on brief.

Rerat Law Firm, P. A., Charles A. Collins (argued), Minneapolis, Minn., for Warner C. Holten.

Before BRIGHT and HENLEY, Circuit Judges, and HARPER, Senior District Judge.*

BRIGHT, Circuit Judge.

The Benefits Review Board, affirming a decision of an administrative law judge, ordered the Duluth, Missabe and Iron Range Railway Company (Employer) to pay to Warner C. Holten disability benefits for total and permanent disability pursuant to the provisions of the Longshoremen's and

* ROY W. HARPER, Senior District Judge, Eastern District of Missouri, sitting by designation.

Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (Act). In this petition for review the Employer challenges the administrative determinations, contending that the Employee, Holten, did not sustain an injury entitling him to benefits under the Act; that Holten's claim, in any event, is barred by the Employee's failure to give adequate notice to the Employer of the alleged injury; that the Employer, in any event, is not liable for certain medical expenses because they were incurred without the Employer's authorization; and, finally, that the Special Fund established under § 44 of the Act, 33 U.S.C. § 944, is responsible for the portion of disability benefits due Holten, if any, resulting from an existing permanent partial disability from which the Employer asserts Holten suffered. The claimant also participates in this appeal as an intervenor.

We sustain the decision of the Benefits Review Board with one exception—that of the Employer's liability for Holten's medical expenses incurred by physicians retained through his attorneys. As to that issue, we remand for further consideration and determination.

## I. *Facts.*

Holten worked as a "lift man" in the loading of iron ore boats in Duluth, Minnesota. On April 29 or 30, while manipulating levers which operated spouts through which iron ore flowed into the boats, a lever suddenly released, thrusting Holten backwards. He released his hold on the lever and felt a sharp pain in his right shoulder. Holten testified that he reported the injury to his supervisor, Varner Engstrom. Further, according to Holten's testimony, Engstrom advised him to file a written report immediately, but Holten failed to do so. Holten continued to work until May 1973, but during that period he received medical treatment for neck and shoulder difficulties on a number of occasions. On June 1, 1973, Holten took his annual vacation. He never thereafter returned to work.

Holten sought treatment at the emergency room of St. Luke's Hospital in Duluth on May 18, 1973. He returned to the emergency room on May 26th, 28th, and 30th for further treatment. On June 6th, he entered the hospital on an inpatient basis. Holten was examined the next day by Dr. W. D. Rudie. Dr. Rudie's report on this examination indicates that Holten claimed that he had sustained his injury on April 29th while working for the Employer railroad; he was apparently moving a lever and had a sudden, severe pain in his right shoulder. Dr. Rudie's preliminary diagnosis was "degenerative cervical disc disease with resultant neuritis."

On July 13, 1973, Holten underwent a cervical disc operation at St. Luke's Hospital. The surgeon was Dr. W. S. Pollard. The spinal discs at the 4–5 and 5–6 cervical interspaces were removed and these areas were fused with bone plugs. The surgical diagnosis was that of "neuralgia right arm secondary to cervical disc degeneration and spurring cervical 4–5, C 5–6."

The operation was not entirely successful, but the patient did improve, became ambulatory, and was ultimately discharged from the hospital. Dr. Pollard felt that he might benefit from further therapy such as a "sympathetic block and/or consideration of sympathectomy." The hospital report indicates that such therapy was offered Holten but he declined waiting recommendation of his attorney in Minneapolis.

Holten was referred by his attorney to Dr. A. Ross Lerner of Minneapolis on October 4, 1973. Holten was hospitalized at Mt. Sinai Hospital in Minneapolis from October 31 to November 19, 1973. Dr. Lerner called in Dr. Leonard Titrud, a Minneapolis neurosurgeon. On November 26, 1973, Holten again underwent surgery, this time by Drs. Titrud and Lerner, who loosened the nerve roots at the 5th and 6th cervical levels, and made more room for the spinal cord to move away from the bony ridges of the spinal canal. The operation did not greatly change Holten's condition but was of some limited success, permitting claimant to move his body more freely.

At the hearing the testimony established that the claimant, then age 65, suffers from

a stiff neck, limited range of motion in his right shoulder, and a clawed, generally unusable right hand. He also complains of pain in his right upper extremity and shoulder as well as in his right leg.

The medical records reveal that Holten suffered neck problems as early as 1959. The records of St. Luke's Hospital in Duluth disclose that he was hospitalized from February 13 to February 21 in that year, with complaints of dizziness diagnosed as low-grade labyrinthine (inner ear) disturbance that probably was Meniere's Syndrome, plus painful stiffness in the neck, particularly on the right side. Spinal x-rays demonstrated marked hypertrophic ridging from the third to seventh cervical levels. At that time the patient underwent halter traction and an occipital nerve block for nerve root inflammation secondary to osteoarthritis of the cervical spine. This treatment gave considerable relief from the pains in the neck and occipital area.

The working diagnosis issued by Dr. Pollard in 1959 included the following comment:

> Surgery may be necessary on this man considering the onset of this pain without specific trauma. However, a period of cervical traction therapy should be vigorously pursued before we consider operating on what is ess. [essentially] a degenerative process.

The testimonial record in this case discloses that after the 1959 treatment until the date of the alleged work-related injury in 1973, Holten performed jobs involving heavy manual labor without apparent problem.

Drs. Lerner and Titrud, who testified before the administrative law judge, attributed Holten's present disabilities to aggravation of Holten's preexisting condition caused by the alleged accident Holten suffered while loading the iron ore boat on April 29 or 30, 1973.

Dr. Pollard, who did not testify at the hearing, indicated in his reports that no connection existed between the alleged injury and Holten's present condition. Other medical reports in the medical history recite the occurrence of the injury without offering any medical opinion as to a causal connection between that alleged incident and Holten's present condition.

## II. *Proof of Injury, Causation, and Notice.*

The Employer's claims that Holten did not sustain a compensable accident in the course of his employment, and that Employer did not receive the statutory notice of the accident, merit little discussion. These issues rest on factual matters upon which the administrative agency has made findings.

■ Our scope of review is governed by well-established principles. The administrative findings of fact in cases arising under the Longshoremen's and Harbor Workers' Compensation Act may not be disturbed unless they are unsupported by "substantial evidence on the record considered as a whole," *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951); *see also Banks v. Chicago Grain Trimmers Association*, 390 U.S. 459, 467, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968).

■ The substitution of administrative law judges for the deputy commissioners, who previously adjudicated cases under the Act, and the Benefits Review Board, which now officially reviews compensation orders rather than district courts, has not changed the settled principles of appellate review in a court such as ours.[1]

■ The administrative law judge found that Holten suffered an injury in the course of his employment which resulted in perma-

1. *See* Act of Oct. 27, 1972, Pub.L. 92–576, § 14, 86 Stat. 1251, 1261, *amending* Act of Mar. 4, 1927, ch. 509, § 19(d), 44 Stat. 1435, *as amended*, 33 U.S.C. § 919(d); Pub.L. 92–576, § 15(b), 86 Stat. 1251, 1261, *amending* Act of Mar. 4, 1927, ch. 509, § 21(b), *as amended*, 33 U.S.C. § 921(b); *Walker v. Rothschild Int'l Stevedor-*ing Co., 526 F.2d 1137, 1138 (9th Cir. 1975); *Nardella v. Campbell Mach., Inc.*, 525 F.2d 46 (9th Cir. 1975); *Offshore Food Serv., Inc. v. Benefits Review Board*, 524 F.2d 967 (5th Cir. 1975); *Potenza v. United Terminals, Inc.*, 524 F.2d 1136 (2d Cir. 1975). *Cf.* Pub.L. 92–576, § 21(b)(3), *as amended*, 33 U.S.C. § 921(b)(3).

nent disability and required medical treatment, which he has undergone. His findings are supported by Holten's own testimony. That some incident occurred during his employment which triggered his present medical condition is supported by medical histories given to physicians that Holten saw while being treated in the Duluth area. And, as we have already noted, Drs. Lerner and Titrud opined that the incident of April 29th or 30th did in fact trigger his present complaints.

Thus, the record as a whole, which we have reviewed, offers sufficient support to substantiate the administrative law judge's findings, affirmed by the Benefits Review Board, that Holten suffered an injury giving rise to compensation under the Act. Accordingly, the Employer's contentions going to the factual basis of the claim must be rejected.

■ The failure of notice defense offered by the Employer likewise rests upon a factual determination. The relevant statute, 33 U.S.C. § 912(a), requires claimant-employees to give their Employer written notice of injury within 30 days of the date of such injury. Section 912(d) provides, however, that failure to give such notice does not bar the claim if the Employer or its agents had knowledge of the injury and the Secretary determines that the Employer was not prejudiced by the employee's failure to give notice.

Holten testified that he gave his supervisor notice of his injury on or about the date of the accident. He further testified that he "told them in the office" that he was taking his vacation because of his sore shoulder and back. Varner Engstrom, Holten's supervisor, admitted that during the general period of time in question Holten had mentioned an injury to him that had something to do with manipulating the heavy doors while loading ore. Engstrom denied receiving any formal report of an accident, however.

We note that 33 U.S.C. § 920(c) creates a presumption that the Employer has been given sufficient notice of a claim in the absence of substantial evidence to the contrary. The administrative law judge deemed the testimony of Engstrom insufficient to rebut the presumption that the Employer received sufficient notice of the claim and determined that, taking all of the evidence into account, the "Employer had sufficient knowledge that it should have been alerted to investigate the matter." This finding is supported by the record. Moreover, the record discloses no prejudice to the petitioner from any failure to receive a formal report of accident. Under the circumstances, the ruling of the administrative law judge on the notice issue, affirmed by the Benefits Review Board, must also stand.

III. *Liability of Special Compensation Fund.*

From the evidence on the record it seems clear that Holten's present disability resulted from an aggravation or an activation of a previous osteoarthritic condition in the claimant's spine. Dr. Titrud testified:

A. I believe it was the incident [of April 29th or 30th, 1973] that caused his trouble.

I don't know if it increased the process of his arthritis, but I think that the arthritis had something to do with his getting in more trouble than if he did not have such a condition.

Q. But this would have been the mechanism that more or less triggered the subsequent problem?

A. I believe so.

The Employer contends that Holten suffered from an "existing permanent partial disability," the underlying arthritic condition of his spine, and therefore that the Employer's liability for compensation is limited by the provisions of § 8(f) of the Act, 33 U.S.C. § 908(f). That section, in essence, limits an employer's compensation liability for an employee's accident which produces permanent total disability where that employee at the time of the accident already suffers from an existing permanent partial disability. That subsection, as pertinent here, reads as follows:

(f) Injury increasing disability: (1) In any case in which *an employee having an existing permanent partial disability* suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. * * * In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide in addition to compensation under paragraphs (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only. [Emphasis added.]

We focus on the statutory provisions which refer to "an employee having an existing permanent partial disability * *."

Congress, in enacting the Longshoremen's and Harbor Workers' Compensation Act in 1927, included therein a provision taken from existing workmen's compensation laws which limited an Employer's liability for an employee's "second injury" which, when combined with a previous disability, resulted in greater disability than would have resulted had an employee without a previous disability sustained the injury. Generally, the Employer was liable only for the portion of the disability attributable to the second injury. Prior to a 1972 revision, the operative statute read:

(f) Injury increasing disability: (1) If an employee receive an injury which of itself would only cause permanent partial disability but which, *combined with a previous disability*, does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury: *Provided, however,* That in addition to compensation for such permanent partial disability, and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid the remainder of the compensation that would be due for permanent total disabil-

ity. Such additional compensation shall be paid out of the special fund established in section 44. [Act of Mar. 4, 1927, ch. 509, § 8(f), 44 Stat. 1427 (emphasis added, emphasis in original).]

While the statutory language has been changed since 1927, the legislative history suggests that no substantive change was intended in the prior interpretation of the law. *Atlantic & Gulf Stevedores v. Director, etc.,* 542 F.2d 602, 607 (3d Cir. 1976).

The Supreme Court discussed the origin and purposes of the second-injury special fund provisions in *Lawson v. Suwannee Fruit & S.S. Co.,* 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949). In that case the administrator under the Longshoremen's Act unsuccessfully argued that the Employer could not benefit from the special fund provisions of the Act where an employee who had previously lost one eye through causes unconnected with his employment thereafter lost the sight of his other eye in the course of his employment. The Court held that the Employer was entitled to the benefits of § 8(f), and that the term "previous disability," as used in that statute, was not confined to disability defined by the Act, *i.e.,* disability meaning incapacity resulting from accidental injury arising out of and in the course of employment. The Court said:

[W]e conclude that the term "disability" was not used as a term of art in § 8(f)(1) * * *. 336 U.S. at 206, 69 S.Ct. at 507.

The administrative law judge and the Benefits Review Board declined to give Holten's employer the benefits of § 8(f) on account of Holten's prior alleged disability, because Holten's previous condition did not impair Holten's earning capacity, reasoning that the term "disability" as it is used in § 8(f), reflects "an economic and not a medical concept," relying upon language contained in *American Mutual Ins. Co. of Boston v. Jones,* 138 U.S.App.D.C. 269, 426 F.2d 1263 (1970). The administrative law judge ruled:

The record does not support a contention that the claimant was disabled in an economic sense prior to the injury which

gave rise to this case. Prior physical infirmities suffered by the claimant are merely pre-existing conditions, not previous disabilities, so that Section 8(f), limiting the employer's liability for payment of compensation, does not apply.

The Employer relies on *Atlantic & Gulf Stevedores v. Director, supra,* 542 F.2d 602 (3d Cir. 1976), to support its contention that § 8(f) applies in this case. In *Atlantic & Gulf Stevedores,* the claimant while working aboard the *S.S. Export Adventurer* collapsed and died of a heart attack. The administrative law judge there found that prior to the fatal heart attack, the claimant suffered from diabetes mellitus, labile hypertension, and cardiac arrhythmia, that a person with such conditions is predisposed to heart attacks, and that the Employer was aware of the longshoreman's medical problems. The administrative law judge thereupon concluded that the decedent was suffering from "previous disability" within the meaning of § 8(f). *Id.* at 608. The Benefits Review Board disagreed for two reasons. According to the Board, no evidence existed in the record to support a conclusion that claimant's death was not due solely to acute myocardial infarction. As to this issue the Third Circuit reversed because the Board had ignored substantial testimony to the contrary, and the record as a whole supported the administrative law judge's finding of fact that claimant's previous physical conditions contributed to the onset of the fatal heart attack.

The Board advanced an additional ground for reversing the administrative law judge's § 8(f) determination. The Board ruled that § 8(f) did not apply because the prior physical disabilities did not constitute an "economic disability." The Third Circuit disagreed, finding no justification in the Act for the Benefits Review Board's conclusion that the term "existing permanent partial disability" in § 8(f) must be confined to an "economic disability," *i.e.,* a condition which reduced the worker's wage-earning capacity, and criticized the Board's reliance on *American Mutual Ins. Co. of Boston v. Jones, supra.* The court said:

In the compensation context, the quoted language in *Jones* [*American Mutual Ins. Co. of Boston v. Jones*] is an unexceptionable proposition. But if it were to be applied for the purpose of overcoming the liability of the Special Fund, it would defeat the very purpose of § 8(f). Indeed that section would be transformed into a veritable Catch-22. Any employer who in reliance on § 8(f) hired a disabled person would immediately lose the statutory limitation on his liability, since upon hiring a handicapped worker any preexisting economic disability would terminate. The result is, of course, absurd, and is inconsistent with the policy objectives discussed in the *Lawson* case. [*Atlantic & Gulf Stevedores v. Director, etc.,* 542 F.2d 602, 609 (3d Cir. 1976).]

Appellee, director of the Office of Workers' Compensation Programs, suggests that we reject the authority of *Atlantic & Gulf Stevedores* as contrary to precedent under both state and federal law, as altering the application of § 8(f) in a manner never intended by Congress, and as otherwise erroneous. The appellee notes that Professor Larson in his treatise on compensation laws asserts unequivocally that "apportionment does not apply * * * in any case in which the prior condition was not a disability in the compensation sense." 2A A. Larson, *The Law of Workmen's Compensation,* § 59.20 at 10–273 (1974). In the context of this case we find it unnecessary to express either agreement or disagreement with the *Atlantic & Gulf Stevedores* case.

The district courts in cases of this kind have recognized that arthritis of the back and congenital anomalies of the spine which produce mechanically weak backs do combine with subsequent accidents to produce permanent total disability, but in such instances the limitations of § 8(f) have not applied to limit the Employer's liability. *Boyd-Campbell Co. v. Shea,* 254 F.Supp. 483 (S.D.Tex.1966); *United States Fidelity & Guaranty Co. v. O'Keeffe,* 240 F.Supp. 813 (S.D.Fla.1962). In denying the benefits of § 8(f) treatment to an Employer, the courts have adopted a "latent-manifest" test for

determining when an Employer will receive the benefit of § 8(f) treatment. Only those employers who employ handicapped workers with knowledge of their disabilities qualify for limited liability under that section, so unless a worker's preexisting condition is "manifest" to the Employer, § 8(f) does not apply. The latent-manifest test is discussed in *Atlantic & Gulf Stevedores, supra*, 542 F.2d at 609. The Third Circuit noted:

> The latent-manifest test is one method for separating eligible from ineligible employers. In view of the difficulty in proving actual knowledge of a disability, the test is ordinarily an objective one. Conditions that are latent rather than manifest to a prospective employer do not qualify as § 8(f) disabilities.

The Third Circuit went on to say:

> If this court determines that [claimant's] medical history was latent, the Board's order finding against Atlantic & Gulf on the § 8(f) issue must be sustained.

Here, the parties have assumed that Holten's prior medical condition was a manifest one which the Employer could not have failed to notice. The Employee had been off work and hospitalized for the condition several times prior to 1973. The record, however, shows that Holten worked for 14 years after his 1959 hospitalization without disclosing any medical problems to his employer, nor did Employer's periodic routine medical examinations disclose any substantial condition of ill health which might affect Holten's ability to work.

The Employer's exhibits offered in this case contain several records of medical examinations given to Holten at three year intervals while he worked for the Employer. These examinations took place on April 13, 1955, April 24, 1958, April 10, 1961, March 22, 1968, and November 16, 1971. All of the medical examinations reported that Holten was in good physical condition, including his back, with no recommendation by the physician for a back x-ray. The reports are otherwise negative except for a comment in the 1971 medical report that

Holten was advised to stop smoking because of a chronic obstructive pulmonary disease.

■ The determination of whether a previous disability was "manifest" or "latent" is a factual one, and a number of factors may come into play. The critical element is what information the Employer has available to him when the employee is hired. *See Dillingham Corp. v. Massey*, 505 F.2d 1126 (9th Cir. 1974). Although the administrative law judge made no factual determination on this point, the Employer's own medical examinations demonstrate that the information available to the Employer during Holten's employment did not make Holten's arthritic condition manifest to the Employer. Here, the Employer is bound by its own negative medical findings. The Employer presented no other evidence that it had other sources of information regarding Holten's prior condition. The knowledge possessed by the physicians treating Holten in 1959 cannot be attributed to the Employer. They were not serving as "company" doctors while treating Holten, nor did any treating physician serve as an examining physician for the Employer.

■ The medical examinations plainly show that any previous disability was not manifest to the Employer during Holten's approximately 14 years of employment prior to the incident of April 29 or 30, 1973. Under these circumstances, the Employer cannot claim the benefits of apportionment of compensation under § 8(f). *Dillingham Corp. v. Massey, supra.*

IV. *Liability for Medical Expenses.*

■ The Employer disclaims any liability for medical expenses incident to services performed by Drs. Lerner and Titrud on the basis that Holten failed to comply with the notice and authorization requirements of 33 U.S.C. § 907(d). That section, as pertinent, provides:

> (d) An employee shall not be entitled to recover any amount expended by him for medical or other treatment or services unless he shall have requested the employer to furnish such treatment or serv-

ices, or to authorize provision of medical or surgical services by the physician selected by the employee, and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide or authorize the same[.]

Holten's counsel contends that the Employer cannot avail himself of any defense under that section because the Employer denied liability to Holten under the Act. Moreover, Holten's attorney asserts that the Employer had been notified of the likelihood of further surgery by Dr. Lerner in a report which Dr. Lerner had prepared for Holten's counsel, which report had been referred to the Employer through the Office of Workmen's Compensation Programs of the Department of Labor.[2]

The Employer counters by arguing that its company physicians were in fact furnishing Holten medical services at St. Luke's Hospital in Duluth under a health insurance policy obtained by the Employer for the benefit of its employees.

The administrative law judge did not address the § 907(d) contentions, although he did find that Dr. Lerner's and Dr. Titrud's services were necessary. The respondent, director of the Office of Workers' Compensation Programs, contends that Employer had not properly submitted the § 907(d) issue to the administrative law judge. The record, however, establishes that the issue was raised before the administrative law judge. The Employee's attorney has argued the matter on the merits, and as we have noted, has presented material for our consideration in a supplemental appendix. Under the circumstances, we believe it proper that the administrative agency first address this question.

Accordingly, except as to the § 907(d) medical expense issue which we remand to the administrative agency for resolution,

we affirm the decision of the Benefits Review Board.

---

**2.** This material is contained in the supplemental appendix by attorneys for Holten.