FORD AEROSPACE AND COMMUNICATIONS CORPORATION and American Foreign Insurance Association, Employer/Carrier-Petitioners,

v.

Miriam C. BOLING, Respondent,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 81-7539.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1982.

Decided Aug. 17, 1982.

Albert Sennett, Hanna, Brophy, McLean, McAleer & Jensen, San Francisco, Cal., for employer/carrier-petitioners.

Joseph C. Waxman, San Francisco, Cal., for respondent.

Before BROWNING, Chief Judge, SWYGERT,[*] Senior Circuit Judge, and WRIGHT, Circuit Judge.

SWYGERT, Senior Circuit Judge.

On September 29, 1977, Vernon Boling died after suffering a myocardial infarc-tion. Around noon he was in the barracks provided by his employer, Ford Aerospace and Communications Corporation ("Ford"), and began experiencing chest pains. An ambulance was called, but a stretcher could not be gotten to his room because of the narrow construction of the barracks' pas-sageway. As a result, Boling was forced to walk from his room to a larger room where a stretcher was waiting—a distance of twenty to forty feet. He made this walk while suffering the myocardial infarction and sweating profusely. He was carried by stretcher from the larger room to the am-bulance and taken to the hospital. Four-teen hours later he died.

Miriam Boling, the deceased's widow, filed a claim for death benefits under the Longshoremen's and Harbor Workers' Com-pensation Act, 44 Stat. 1424, *as amended*, 33 U.S.C. §§ 901 *et seq.* ("the Act"). On April 22, 1980 the Administrative Law Judge (the "ALJ") issued his decision that found the claim compensable. The Benefits Review Board affirmed the ALJ's decision on July 21, 1980. The defendants petitioned this court for review pursuant to 33 U.S.C. § 921(c).

We address two issues. First, did the ALJ correctly apply the zone-of-special dan-ger concept in finding that the obligations and conditions of employment created a sit-uation from which Boling's injury arose? Second, was there substantial evidence on the record as a whole for the ALJ's finding that the deceased's walking from his room to the stretcher aggravated his injury?

I

In *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951), the Court stated the standard of coverage for the Act:

The test of recovery is not a causal rela-tion between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be

---

[*] The Honorable Luther M. Swygert, United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

642

engaged at the time of the injury in an activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose.

*Id.* at 507, 71 S.Ct. at 472 (citations omitted). The ALJ found the claim compensable under the Act on the theory that: (1) Mr. Boling was obligated to live in the barracks provided by his employer because of the remote location of the facilities in Thule, Greenland; (2) the construction of the barracks prevented a stretcher from being taken to Mr. Boling's room; and (3) Mr. Boling's being forced to walk to the stretcher aggravated his injury and contributed to his death.

No one disputes that living in the barracks was an obligation or condition of employment. The defendants argue, though, that the ALJ's decision imposes absolute liability on an employer for any injury as long as the job location is less than the best place imaginable to survive a heart attack. They contend that the ALJ has, in effect, held that providing an employee with an off-duty location that is not an intensive care unit constitutes a special danger. They note that there are few residences located within one hundred yards of a hospital (as the barracks here was). The standard of medical care in this case, they allege, was far above that available to most residents of the United States.

■ The ALJ held, however, that the zone of danger was constituted by the construction of the barracks. The location of the hospital with respect to the barracks was irrelevant to his decision. The ALJ found that the layout of the barracks prevented a stretcher being brought to Boling's room and consequently forced him to walk twenty to forty feet. This walk, he held, aggravated his condition and contributed to his death. If one accepts that medical claim (see Part II), the issue is the inability to get the stretcher to the room— not the location of the hospital. Even if the hospital room had been connected to the barracks, therefore, it would not have mat-

tered to the ALJ's reasoning. The defendants have failed to show that the ALJ erred in finding that the construction of the building prevented the stretcher from being carried to Mr. Boling's room.

## II

The defendants also contend that the ALJ lacked substantial evidence in finding that the deceased's condition was aggravated by being forced to walk in an upright position to the stretcher. Two cardiologists gave widely-divergent testimony on this issue. The plaintiff called Dr. Blackard. He testified that Boling's walking the twenty to forty feet during his myocardial infarction increased the size of the infarction and so decreased his chances of survival. He concluded that the walking contributed significantly to his death. The defendants presented Dr. Mintz who concluded that the walking had no effect on Boling's death.

■ The defendants assert that Dr. Blackard's opinion lacks any scientific or rational basis, but they present no basis for this assertion. There was conflicting testimony that the ALJ resolved in Blackard's favor. The role of the trier of fact is to resolve conflicting testimony. 33 U.S.C. § 920 makes clear that all doubts are to be resolved in favor of the claimant. For these reasons, therefore, we conclude that the ALJ's finding has substantial support in the record.

## III

■ The Act provides that one who successfully prosecutes a disputed claim against an employer is entitled to reasonable attorney's fees "in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final." 33 U.S.C. § 928(a). The criteria for entitlement are: (1) the claim is disputed, (2) the claimant utilizes the services of counsel, and (3) the claim is successfully prosecuted. We have authority to grant

fees for work done on appeal from the Benefits Review Board decision, but we do not have the competence or authority to grant fees for work before the ALJ or the Board. *See Ayers Steamship Co. v. Bryant,* 544 F.2d 812, 814 (5th Cir. 1977).

We have adopted the procedure prescribed by the Third Circuit for seeking fees under this section. *National Steel v. U.S. Dept. of Labor,* 606 F.2d 875, 883 (9th Cir. 1979), *quoting with approval, Atlantic & Gulf Stevedores, Inc. v. Director, OWCP,* 542 F.2d 602, 610 (3d Cir. 1976). The procedure is:

1. Whether an award will be made will first be considered with the merits of the case.

2. If the claimant succeeds on the merits, the Court will then consider an application for attorney's fees by motion to the merits panel.

   a. Notice must be given to the employer.

   b. An affidavit must be filed in support of the application setting out:

      i. those considerations the claimant's attorney believes should govern the amount to be awarded;

      ii. the hours devoted to each category of work connected with the appeal and the reasonable hourly rate for each person involved; and

      iii. any sharing arrangement as required by 33 U.S.C. § 928(e).

3. The employer may respond by brief and affidavit.

4. The panel may determine the amount of the award based upon these papers or, in its discretion, hear oral argument.

Because all three criteria for entitlement have been met, Miriam Boling should submit the necessary papers to the panel within twenty-one days of the receipt of this order. The employer may respond, if it deems it appropriate, within thirty-five days of the date of this order. We will retain jurisdiction of this case to the extent

necessary to fix attorney's fees and will make that determination upon receipt of a timely motion as provided for above.

The order of the Benefits Review Board is enforced.