DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

GENERAL DYNAMICS CORPORATION and Mary Graziano (Widow of Charles Graziano), Respondents.

No. 82–1636.

United States Court of Appeals, First Circuit.

Argued Feb. 4, 1983.

Decided April 22, 1983.

---

Janet R. Dunlop, U.S. Dept. of Labor, Washington, D.C., with whom T. Timothy Ryan, Jr., Sol. of Labor, and Donald S. Shire, Associate Sol., Washington, D.C., were on brief, for petitioner.

Norman P. Beane, Jr., Boston, Mass., with whom Stephen E. Laskin, and Murphy & Beane, Boston, Mass., were on brief, for General Dynamics Corp.

Before ALDRICH and BREYER, Circuit Judges, and ZOBEL,[*] District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

We would affirm the decision of the Benefits Review Board limiting respondent's liability simply on its opinion, were it not that we believe that the persistent attempt by the Director of the Office of Workers' Compensation Programs (OWCP), United States Department of Labor, to limit the scope of section 8(f) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 908(f), calls for our articulated views. We add these to those of our sister circuits, see *Director, OWCP v. Todd Shipyards Corp.*, 9 Cir., 1980, 625 F.2d 317; *Director, OWCP v. Potomac Electric Power Co.*, D.C.Cir., 1979, 607 F.2d 1378 (per curiam); *Director, OWCP v. Sun Shipbuilding & Dry Dock Co.*, 3 Cir., 1979, 600 F.2d 440, as well as to the many decisions of the Board.

In brief, the facts are that in 1972 Charles Graziano was hospitalized for a non-work connected kidney infection and peptic ulcer. Bronchitis, and eventually emphysema, were also diagnosed, and were traced to a long history of heavy smoking. After discharge his treating physician advised him that he could return to his same job at the shipyard as a maintenance mason. His duties had thus far included breaking up old, and laying new, cement, cleaning acid tanks, removing asbestos covering from broken pipes incident to repair work, and similar jobs. Before authorizing his return to work, the company's medical director noted evidence of pulmonary disease, but also considered him able to return to work.

The Director states that Graziano's further exposure, on his return, to dust, fumes, and the like, was "contra-indicated," and implies in his brief that respondent deliberately assigned the decedent to work that entailed further injurious exposure. The Director is able to give this impression by omitting reference to the fact that the contra-indication came entirely from trial testimony of medical evaluations conducted between 1974 and 1976. In 1972 no one had noted anything of the kind, and both respondent's physician and decedent's own treating physician had expressed the opinion that Graziano could return to his same work. Perhaps the Director makes these assertions based on our prior opinion, *Graziano v. General Dynamics Corp.*, 1 Cir., 1981, 663 F.2d 340, 341, where our description of the facts could be read to say that his pulmonary condition was linked in 1972 to workplace dust and fumes. The date, however, was not then in issue, and neither doctor had then connected the condition with his work.

Because of his past health experience, however, Graziano's duties on his return were somewhat lightened, but much of his work in the next two years took him into the steel shop, which was "foggish" with fumes and smoke. In 1973 his shortness of breath became marked, and in 1974 he quit work altogether. Although the expert testimony varied, the ALJ credited testimony which indicated that working conditions had aggravated his condition, and had perhaps been a minor contributing factor from the start. As the Director put it, "[t]he exposure to pathogenic stimuli aggravated his chronic obstructive pulmonary disease and made him more susceptible to viral or pneumonic processes." In 1976 he suffered a respiratory arrest and was rushed to the hospital, dying shortly thereafter of various

[*] Of the District of Massachusetts, sitting by designation.

causes including his pulmonary and kidney conditions.

Before his death Graziano had claimed compensation, and upon his death his widow claimed death benefits. The travel of this case has already brought it before us on the issue of Graziano's maritime status, *Graziano v. General Dynamics Corp.*, ante. The merits of the Benefits Review Board's award of compensation has not been appealed, and the only present issue is the Director's contention that General Dynamics is not entitled to limit its liability by the provisions in section 8(f).

Under the compensation scheme as first enacted employers were required to compensate a worker who was totally and permanently disabled by an injury even if an existing partial disability contributed. To take an extreme case, a worker who had previously lost an eye would be permanently and totally disabled by the loss of the second eye even though loss of a single eye normally would result in only a partial disability. Enforcement of such a "take your worker as you find him" rule led many employers not to hire, or not to retain, workers suffering from a permanent partial disability. To combat that reluctance Congress enacted section 8(f), which provided, inter alia, that in case of total and permanent disability or death not solely caused by the second injury, the employer's liability for compensation or death benefits would be limited (for the most part) to 104 weeks. *See Lawson v. Suwannee Fruit & S.S. Co.*, 1949, 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611; *General Dynamics Co. v. Sacchetti*, 1 Cir., 1982, 681 F.2d 37, 39–40. The remaining compensation would be paid out of a general fund, viz., the Special Fund created by 33 U.S.C. § 944. The issue presented by the instant case is whether aggravation of an existing "disability" so qualifies. The Third, Ninth, and District of Columbia Circuit Courts of Appeals, see citations ante, have expressly held that it does. Although our opinion in *General Dynamics Corp. v. Sacchetti*, ante, implied agreement with these courts, this circuit, along with others, has not squarely faced the issue. *See, also, Director, OWCP v. Newport News Ship-*

*building & Dry Dock Co.*, 4 Cir., 1982, 676 F.2d 110; *Equitable Equipment Co. v. Hardy*, 5 Cir., 1977, 558 F.2d 1192; *Duluth, Missabe & Iron Range Ry. Co. v. U.S. Department of Labor*, 8 Cir., 1977, 553 F.2d 1144.

We begin by noting that every argument the Director musters in support of limiting section 8(f) has been consistently rejected. The Director suggests that this is so due to a lack of understanding, or of sufficient consideration. A review of the cases, however, shows that the Director's arguments have been fully dealt with, and his errors in analysis and use of authority patiently pointed out. The real problem is that the courts, and the Board, do not accept the Director's attempt to restrict the application of the statute to a narrow class of cases.

The Director contends that the statute applies when a prior condition, combined with a new and unrelated injury, results in greater disability than would be caused by the latter alone, but does not apply when the former contributes to, or causes, the injury itself. Thus the Director uses the prior example of a worker who has previously lost an eye and who would obviously suffer more *disability* if a work-related injury caused him to lose the second than if he had possessed both in the first place. But if the second injury is only an aggravation of the first, such as where diminished sight in both eyes is aggravated, with a result of total loss of sight, section 8(f) does not, the Director contends, help the employer.

In addition to arguing that in aggravation cases only one "injury" exists and hence section 8(f) is inapplicable on its face, the Director says,

"The language and underlying policy of section 8(f) applies only to cases in which the worker's exposure to the same risks of the same injuries as other workers might otherwise result in greater *disability*, and hence greater employer liability, than in cases in which those same injuries strike otherwise able-bodied workers.

Section 8(f) was not enacted to encourage the employment of workers who are more likely to be *injured* than other workers performing the same job."

The Director contends that the Board's construction would have the widespread result of employers purposefully placing permanently partially disabled employees in dangerous, aggravating jobs in the hope that they will receive further injury, and hence limit the employer's liability.

The contention that in aggravation cases there is but one injury, and hence section 8(f) is inapplicable on its face, does not withstand scrutiny. Section 2 of the Act, 33 U.S.C. § 902(2) defines an injury as an "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment . . . ." Keeping in mind that for purposes of section 8(f) definitions are to be interpreted to further the purpose of the section, *see Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S., ante, at 201, 69 S.Ct., at 504, we see no reason why a traumatic event or exposure to adverse stimuli aggravating an existing condition which results in new harm should not be viewed as a second injury.

More fundamentally, it is difficult to see the reason for the Director's basic position. If a worker has a back injury from which he partly recovered, leaving a partial disability, or a residual susceptibility, should the employer lose the benefit of section 8(f) for all future back troubles? The Director has argued, unsuccessfully, that it should. *See Director, OWCP v. Sun Shipbuilding & Dry Dock Co.*, ante; *C. & P. Telephone Co. v. Director, OWCP*, D.C.Cir., 1977, 564 F.2d 503; *Equitable Equipment Co. v. Hardy*, ante. Yet, to eliminate from the statute all recurrences, or significant increases of existing disability except from an unrelated cause, would seem from the standpoint of prospective employers a significant diminution of its general purpose. Many of the injuries nominally falling into this area would be ones aggravating an existing disability rather than being unrelated.

Nor is there as clean a line between unrelated injuries and aggravation as the Director would make out. A one-eyed or one-armed worker, for example, may suffer a supposedly unrelated injury precisely because he failed to see the harm coming, or was unable to save himself from a fall. Here, not only is the risk of permanent disability higher, but also the risk of injury itself—supposedly the distinguishing factor in an aggravation case. The Congressional purpose in enacting section 8(f), to encourage employers to hire or retain partially disabled employees, would be only half served if the Director's interpretation were adopted.

The Director says that this is not so because employers already have an incentive to retain employees who suffer partially disabling injuries. His argument runs that if an employer fails to retain an employee after he suffers a partially disabling injury, in most cases the employee can use that fact to establish permanent and total disability for which the employer would be liable. The weakness of this reasoning has already been noted, *Director, OWCP v. Potomac Electric Power Co.*, 607 F.2d, ante, at 1382–83, and flies in the face of the Congressional determination that a clear cut incentive to hire or retain partially disabled workers is needed. It also fails to explain why section 8(f) should not apply to aggravation cases where the employer has hired for the first time, as opposed to retained, a partially disabled worker.

The Director's apprehension that unscrupulous employers may deliberately assign workers to dangerous employment that may well serve to limit their liability by a second injury is to allow a possible abuse to emasculate the section. Not only does the danger seem totally disproportionate, but the abuse case is open to discovery and rejection. So, too, is the case where the aggravation is de minimis (the Director refers to employers benefitting from the statute by "aggravating the employee's condition, however slightly"), because courts are certainly capable of denying to employers windfalls based on a slight aggravation of an existing partial disability. The Di-

rector's fear that to reject his view "would encourage employers, in most cases, to return employees to work that is likely to lead to greater aggravation of their disabling conditions or even death," we can only regard as emotional argument without factual support. So, too, is his attempt, without findings or evidentiary backing, to imply that this was such a case.

Finally, the Director's invocation of "worker safety" as a purpose of the statute, see *Bath Iron Works Corp. v. White,* 1 Cir., 1978, 584 F.2d 569, 575, adds nothing. The weighing of the benefits of ensuring jobs for the partially disabled versus the risk of further harm to them is a function properly performed by Congress; the Director's argument really goes to the wisdom of section 8(f) itself. As pointed out in *Director, OWCP v. Sun Shipbuilding & Dry Dock Co.,* 600 F.2d, ante, at 442, this is not a matter for judicial resolution.

The order of the Board is affirmed.