**BETHLEHEM MINES CORPORATION, Petitioner,**

v.

**John A. WARMUS and Director, Office of Workers' Compensation Programs, United States Department of Labor and Benefits Review Board, United States Department of Labor, Respondents.**

**No. 77–1918.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Feb. 22, 1978.

Decided June 21, 1978.

William J. O'Brien, Jeffery C. Hayes, Thomas E. Zemaitis, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for petitioner; James F. Brown, Bethlehem Mines Corp., of counsel.

Stanley Lubin, McKendree & Lubin by John F. Sass, Phoenix, Ariz., for respondent John A. Warmus.

Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Mark E. Solo-

mons, Christopher N. Giuliana, Attys., U. S. Dept. of Labor, Washington, D. C., for respondent, Director, Office of Workers' Compensation.

Before ALDISERT, VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Bethlehem Mines Corporation petitions for review of a decision by the Benefits Review Board affirming an award of benefits to claimant John A. Warmus pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 *et seq.* Pursuant to 33 U.S.C. § 928(a), Bethlehem was also ordered to pay attorneys fees and costs. After this case was submitted, we received additional briefing from the parties regarding the effect of recently enacted amendments to the statutes which govern this case. We conclude that there existed substantial evidence for the Board's decision to award benefits, and that Bethlehem is responsible to Warmus for attorneys fees incurred in the prior proceedings.

### I.

Warmus, who is now 70 years old, began working in Pennsylvania coal mines in 1927 and continued this work until 1949. Be-

tween 1950 and 1960, he worked in an automobile assembly plant; for thirteen years thereafter he worked as a janitor, until his retirement in July 1973.

On July 30, 1973, Warmus filed a claim with the Department of Labor for benefits, alleging total disability due to pneumoconiosis contracted during his years in the mines. Based upon testimonial and documentary evidence presented at a hearing on this claim, the hearing officer concluded that Warmus was totally disabled from pneumoconiosis "as that term is defined in Section 402(f) of the Act (30 U.S.C. § 902) and 20 C.F.R. 410.412".[1]

In the subsequent appeal, the Benefits Review Board based its finding of total disability on 20 C.F.R. § 410.426(d), which permits such a finding when pneumoconiosis is medically demonstrated and when other relevant evidence[2] establishes that the miner has a chronic pulmonary or respiratory impairment which prevents him from engaging in comparable employment, regardless of whether that impairment is related to or caused by the pneumoconiosis. 20 C.F.R § 410.426(d) provides:

> Where a ventilatory study and/or a physical performance test is medically contraindicated, or cannot be obtained or where evidence obtained as a result of such tests does not establish that the miner is totally disabled, pneumoconiosis may nevertheless be found totally disabling if

---

**1.** 30 U.S.C. § 902(f) provides:

The term "total disability" has the meaning given it by regulations of the Secretary of Health, Education, and Welfare, except that such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him from engaging in a gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time. Such regulations shall not provide more restrictive criteria than those applicable under Section 423(d) of Title 42.

20 C.F.R. § 410.412 provides:

(a) A miner shall be considered totally disabled due to pneumoconiosis if:

(1) His pneumoconiosis prevents him from engaging in gainful work in the immediate

area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, "comparable and gainful work"; *see* §§ 410.424–410.426); and

(2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months. (Emphasis added).

**2.** 20 C.F.R. § 410.414(c) provides that "other relevant evidence" may include "medical tests such as blood gas studies, electrocardiograms, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits . . . and other supportive materials."

other relevant evidence (see § 410.414(c)) establishes that the miner has or had a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also, considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work.

Bethlehem alleges that there was not substantial evidence supporting the findings; that the Board's interpretation of the applicable regulations was incorrect; and that, if that interpretation *was* correct, it is inconsistent with the rest of the Act.

### A.

■ Bethlehem does not challenge the propriety of the findings that Warmus suffers from pneumoconiosis and that his pneumoconiosis results from his mine employment. Its only challenge goes to the finding of total disability due to pneumoconiosis. "Bethlehem's primary argument on appeal· is that there is not substantial evidence in the record to support a finding that claimant's pneumoconiosis has caused and is causing the chest pain, breathlessness, and coughing and choking of which claimant complains." Bethlehem's Reply Brief at 1. We disagree. The following summary of the medical evidence supports the conclusion that substantial evidence on the record as a whole is in accordance with the agency's findings:

1. The miner's subjective symptoms, including shortness of breath, coughing, "catching" of phlegm in his throat, and limited physical actions were described by claimant. Appendix at 19a *et seq.*

2. The claimant described the continuing effects of his illness and his inability to fully perform janitorial duties. *Id.* at 24a *et seq.*

3. Dr. G. F. Schwartzberg found "very minimal but definite abnormalities which are probably classified as ¼, maybe ½ . . . ." *Id.* at 54–55a.

4. Dr. L. T. Smyth studied x-rays of claimant's chest and also found "small, rounded nodular densities with a profusion of ½" in claimant's lungs. Dr. Smyth's impression was stated as "[p]neumoconiosis, simple type. Category ½." *Id.* at 107a.

5. Dr. N. K. Villamin conducted a physical examination of claimant in which she noted a persistent cough, shortness of breath and other symptoms. Pneumoconiosis "related to dust exposure in the patient's coal mine employment" was Dr. Villamin's concluding diagnosis. *Id.* at 108–09a.

6. Dr. P. L. Bell's impression, following an examination of claimant, was an "[o]bstructive abnormality of ventilation of moderate degree." *Id.* at 110a.

7. Dr. W. C. Weese, who examined claimant less than one month before the administrative hearing, noted the miner's complaint of "almost constant chest pain" since 1936. A chest x-ray revealed "small, irregular opacities (classification ½) in the mid and lower zones on the left and less prominently in the mid and upper zones on the right." Dr. Weese concluded that claimant "has coal workers' pneumoconiosis" and that his condition probably precluded him from "extensive heavy lifting or strenuous labor." *Id.* at 111–13a. Dr. Weese also found a "left bundle branch block" of the heart which was "almost certainly not related to the lung disease." *Id.* at 113a.

Our review of the factual findings made by the hearing officer and accepted by the Board is limited to a determination whether these findings are supported by substantial evidence. 33 U.S.C. § 921(b)(3), incorporated by reference in 30 U.S.C. § 932(a). After a careful review of the record, we conclude that they are.

### B.

■ Our review of the Board's interpretation of the relevant regulations and stat-

ute is plenary. At bottom, Bethlehem's main contention in this regard is that the Act demands a causal relationship between the pneumoconiosis and a claimant's pulmonary impairment.[3] The short answer is that the statute's language does not include this specific requirement. Indeed, support for Bethlehem's proposition is lacking throughout the legislative history which, to the contrary, suggests "a clear need to resolve doubts in favor of the disabled miner or his survivors." 1972 U.S.Code Cong. & Admin.News, pp. 2305, 2315, and "to insure as broad coverage as possible." *Id.* at 2321.

■ Moreover, we are not convinced that the hearing officer, in the first instance, neglected the possibility of a causal relationship. He stated that "[n]o evidence whatever was offered to suggest a possible explanation for this impairment apart from the effects of [claimant's] long exposure to coal mine dust and his affliction by pneumoconiosis as a result thereof. The record thus warrants the conclusion that Claimant's pneumoconiosis totally disabled him . . . ." Appendix at 126–27a. We think this may be read as an inference that Warmus' respiratory disability was caused by his pneumoconiosis, and we find such an inference to be reasonable.

### C.

■ Bethlehem's further argument that, if the regulations can be read to reach this result, they are inconsistent with the Act, again ignores the express intent of Congress, in this instance to "[p]rovide that additional tests, medical and lay evidence be utilized, where relevant, to establish eligibility for benefits." 1972 U.S.Code Cong. & Admin.News pp. 2305–06. If petitioner's argument is correct, it is difficult, if not impossible, to justify the generous provisions in 20 C.F.R. §§ 410.426(d) and 410.-414(c) which allow proof of total disability through other relevant evidence "where ev-

idence obtained as a result of [a ventilatory study and/or a physical performance test] does not establish that the miner is totally disabled" and therefore eligible for benefits. Petitioner's argument in this regard appears to be based more in policy than in law. Confronted with a similar challenge to the Act in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 21, 96 S.Ct. 2882, 2895, 49 L.Ed.2d 752 (1976), the Supreme Court answered that this "is a public policy matter left primarily to the determination of the legislature." Accordingly, the Board's adherence to the statutory guidelines warrants affirmance of its eligibility determination.

### II.

■ On March 1, 1978, President Carter signed into law the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95. In conjunction with its previously enacted companion measure, the Black Lung Benefits Revenue Act of 1977, Pub.L. No. 95–227, 92 Stat. 11, the new legislation amends Title IV in significant ways. Under the recent amendments, no operator is required to pay benefits for any miner whose last coal mine employment occurred prior to January 1, 1970; the responsibility for benefits payments to these miners is shifted to the Black Lung Disability Trust Fund. Thus in the instant action, Bethlehem is effectively relieved of all liability for benefits payments.

The new amendments, however, do not address the question of attorneys fees. Under the prior schema, where an operator denies liability but cannot sustain that denial in litigation, attorneys fees may be assessed against it. 33 U.S.C. § 928, incorporated by reference in 30 U.S.C. § 932(a).

■ The parties agree that because the provision regarding attorneys fees remains the same, the validity of Warmus' claim for benefits must be determined on the basis of

---

**3.** We admit to a certain difficulty in separating conceptually Bethlehem's "substantial evidence" claim, *supra,* and its claims regarding the Board's statutory interpretation. The former is somewhat dependent upon the latter's theory of a causal relationship. Nevertheless, because we reject the causal relationship theory, we felt it important to address as well any attack on the basic factual findings involved in this case.

the Act and the regulations as they existed prior to the recent amendments, but that, even if we affirm the eligibility determination, under the new amendments Bethlehem will be obligated to pay only attorneys fees and costs. Since Warmus has successfully established entitlement to benefits, Bethlehem must pay those attorneys fees and costs which are assessed against it in the Board's order.

For the foregoing reasons, the order of the Benefits Review Board will be affirmed insofar as it awards attorneys fees, and the cause remanded to the Secretary for the necessary order regarding benefits payments under the new amendments.