**REPUBLIC STEEL CORPORATION,**
Petitioner,

v.

**U. S. DEPARTMENT OF LABOR, Director, Office of Workers' Compensation Programs and Helen Hromyak, Respondents.**

**No. 77–1649.**

United States Court of Appeals,
Third Circuit.

Heard Nov. 17, 1978.

Decided Dec. 28, 1978.

---

Ralph A. Davies, Linton L. Moyer, Edward A. McFarland, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for petitioner.

Kenneth J. Yablonski, J. Scott Leckie, United Mine Workers of America, District 5, Compensation Dept., Pittsburgh, Pa., for Helen Hromyak.

Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Judith E. Wolf, Co-Counsel for Black Lung Benefits.

John S. Lopatto, III, Atty., U. S. Dept. of Labor, Washington, D. C., for Director Office of Workers' Compensation Programs.

Before GIBBONS and WEIS, Circuit Judges and DUMBAULD, District Judge.*

## ON PETITION FOR ALLOWANCE OF ATTORNEY FEES

### OPINION OF THE COURT

WEIS, Circuit Judge.

After petitioner was awarded benefits by the Benefits Review Board under the Black Lung Benefits Act for the death of her husband, decedent's employer, Republic Steel Corporation, filed a petition to set aside the order. We affirmed the action of the Board, but because the 1977 amendments to the Act relieved mine operators such as Republic Steel from the obligation to pay benefits in pre-1970 employment cases, payments must be made through the Secretary of Labor and ultimately by the Black Lung Disability Fund. There is no further dispute among the parties as to the entitlement to compensation and the obligation of the Fund to pay it, but claimant has now petitioned for the allowance of counsel fees incurred in pressing the appeal. The amount is not contested.

Before the 1977 amendments became effective, a coal operator was responsible for payment of miners' black lung claims for coal mine employment terminating before

---

* Honorable Edward Dumbauld, United States District Court for the Western District of Pennsylvania, sitting by designation.

January 1, 1970. If no responsible operator or one financially able to respond could be identified, then payment was to be assumed by the Secretary of Labor, 30 U.S.C. § 934 (1976). Section 7(h) of the amendments of 1977, formally entitled the Black Lung Benefits Reform Act of 1977, Pub.L.No.95–239, 92 Stat. 99 (to be codified at 30 U.S.C. § 932(j)) (Reform Act) changed the previous practice and provided that operators would not be liable for payments on pre-1970 employment claims. Under the amended Act, responsibility for payment of these claims was shifted to a Trust Fund created by companion legislation, the Black Lung Benefits Revenue Act of 1977, Pub.L.No.95–227, § 3(d), 92 Stat. 13 (to be codified at 30 U.S.C. § 934(a) (Revenue Act)).[1] These provisions were made applicable to pending cases. Reform Act, § 15, 92 Stat. 103 (to be codified at 30 U.S.C. § 945).

Both petitioner and Republic Steel contend that counsel fees should be paid by the Fund. The Director of Office of Workers' Compensation Programs, however, insists that the fee should either be paid by the employer or assumed by claimant. The 1977 amendments do not specifically refer to the question of counsel fees in connection with pre-1970 employment cases, nor is there any reference to the issue in the legislative history. It is necessary, therefore, to review the Act in some detail.

Entitlement to counsel fees in the circumstances here comes not from explicit provisions of the Black Lung Benefits Act, but rather by its reference to selected portions of the Longshoremen's and Harbor Workers' Compensation Act (hereafter LHWCA), 33 U.S.C. §§ 901–950 (1976). Congress chose to incorporate certain of that Act's procedural and substantive aspects by reference into the Black Lung Benefits Act to avoid repeating them in the latter statute. The complexities of this convoluted process and the confusion it provokes were re-viewed in *Director, Office of Workers' Compensation Programs v. Peabody Coal Co.*, 554 F.2d 310 (7th Cir. 1977), and discussed by this court in *Krolick Contracting Corp. v. Benefits Review Board*, 558 F.2d 685 (3d Cir. 1977). Judge Goldberg has aptly characterized the procedure as a "statutory thicket" and a "gordian knot." *Director, Office of Workmen's Compensation Program v. Alabama By-Products Corp.*, 560 F.2d 710, 711, 720 (5th Cir. 1977).

The Black Lung Benefits Act, 30 U.S.C. § 932(a), pertaining to claims filed after December 31, 1973, incorporated the counsel fee provisions of the Longshoremen's Act, 33 U.S.C. § 928(a). That section provides that "[i]f the employer or [insurance] carrier declines to pay any compensation . . . [and] the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation . . . a reasonable attorney's fee against the employer or carrier." Clearly, then, without the 1977 amendments, the claimant here would have been entitled to seek counsel fees from Republic Steel.

Among the changes included in the 1977 amendments, however, two are pertinent here. Section 7(a)(3) of the Reform Act, 92 Stat. 98, modifies 30 U.S.C. § 932(a), the crossover section referring to the LHWCA, so that it now reads in part:

". . . the provisions of the [LHWCA] shall (except as otherwise provided in this subsection or by regulations of the Secretary and except that references in [the LHWCA] to the employer shall be considered to refer to the trustees of the fund, as the Secretary considers appropriate and as is consistent with the provisions of section 424 [30 U.S.C. § 934]) be applicable . . . ."

---

1. The Black Lung Disability Trust Fund is financed by an excise tax assessed per ton of coal produced from underground and surface mines in the United States and sold by the producer. Revenue Act, § 2, 92 Stat. 11 (to be codified at 26 U.S.C. § 4121). The Fund has as its trustees the Secretaries of Health, Education and Welfare, Labor, and the Treasury, § 3, 92 Stat. 12 (to be codified at 30 U.S.C. § 934a), the Secretary of the Treasury being the managing trustee who will administer the Fund. None of the Secretaries are parties to this action.

In cases before the effective date of the 1977 amendments, where the Secretary of Labor had been required to make compensation payments because no responsible operator had been identified, *see* 30 U.S.C. § 934, no counsel fees for the claimant were allowed. The denial was based on the Secretary's position that he was neither an "employer or carrier," the terms used in the LHWCA. *See also* 33 U.S.C. § 928(c). Under the amendments, however, the trustees are in no position to rely heavily on that defense since the current language, "references in such Act to the employer shall be considered to refer to the trustees of the Fund," requires reevaluation of the issue.

The Director relies upon a regulation recently promulgated by the Secretary of Labor governing the post-amendment processing of claims. 43 Fed.Reg. 36789 (to be codified at 20 C.F.R. § 725.367). Comment f of this regulation, which discusses payment of counsel fees by coal operators or insurance carriers, reads:

> "It is the position of the Department that the Black Lung Disability Trust Fund is not authorized under any circumstances to pay a claimant's attorney's fee in addition to compensation. There is no statutory authorization for such expenses in determining the amount of the tax necessary to keep the Fund solvent. The obligations of the Fund are carefully set forth in the act and legislative history, and no mention of a claimant's attorney's fee is made. In the absence of specific, statutory authority, a claimant's attorney's fees cannot and will not be paid by the fund (*see also* 28 U.S.C. § 2412)."

Interestingly enough, the Benefits Review Board has recently taken a position contrary to the Director by assessing claimant's counsel fees against the Fund in circumstances similar to those under review.

*Solarczyk v. Rochester & Pittsburgh Coal Co.*, 8 BRBS 1026, BRB No. 77–888 BLA (June 30, 1978), *appeal docketed*, No. 78–2031 (3d Cir. Aug. 7, 1978). Thus, we are confronted with conflicting interpretations of a governing statute by an administrative agency and its adjudicative arm. The situation is comparable to that in *Bethlehem Steel Corp. v. Occupational Safety & Health Review Commission*, 573 F.2d 157, 160 (3d Cir. 1978), where we said: "we do not have an authoritative agency interpretation to assist us since the decisions of the Commission are themselves in conflict and inconsistent with the Secretary's position."

The Secretary contends that either the employer or claimant must pay the counsel fees and emphasizes that the Revenue Act, § 3(d), 92 Stat. 13 (to be codified at 30 U.S.C. § 934(a)(5)), details certain expenditures by the Fund without including counsel fees. That section does state that amounts in the Fund shall be available for such items as payment of benefits where no operator is liable, certain administrative expenses of the Departments of Labor, Treasury, and H.E.W., and for reimbursement of the Secretary of Labor for obligations incurred by him in connection with pre-1970 employment claims. As Republic Steel points out, however, the Revenue Act, § 3(d), 92 Stat. 13 (to be codified at 30 U.S.C. § 934(a)(6)) also provides for

> "[t]he reimbursement of operators for amounts paid by such operators (other than penalties or interest) before April 1, 1978 in satisfaction (in whole or in part) of claims of miners whose last employment in coal mines terminated before January 1, 1970."

This is the Randolph Amendment, intended to equalize the positions of coal operators who honored pre-1970 employment claims and those who did not.[2] Republic Steel

---

**2.** During floor discussion of the amendments, Senator Jennings Randolph, recognizing that some employers had already in good faith made payments on claims based on pre-1970 coal mine employment, proposed the amendment to reimburse those operators. The Fund was required to pay the amounts expended by employers in the past since in the future all approved claims based on employment terminating before 1970 would be the obligation of the Fund. This amendment entitled operators like Republic Steel to reimbursement by the Fund for payment of claims, but not interest or penalties. *See* 123 Cong.Rec. S19,496–97 (daily ed. Dec. 15, 1977) (remarks of Sen. Randolph).

contends that the language of this subsection covering "amounts paid," and excluding only "penalties and interest," is significant in that it did not limit reimbursement to compensation payments only. Thus, argues the employer, the amendment should be interpreted to include counsel fees which were paid before the 1977 amendments became effective.

■ We think such a construction is consistent with the brief legislative history available on the Randolph Amendment and its stated purpose. Congress intended that there be equality in treatment between coal operators who did and did not obey payment orders and only excepted from "amounts paid" the categories of penalties and interest. Accepting the premise, therefore, that counsel fee awards paid before April 1, 1978[3] by operators are to be reimbursed from the Fund, the payment by the Fund of counsel fee assessments awarded after that date is not inconsistent with the provisions and intent of § 934. Thus, as we read § 934, Congress did not contemplate that the employer would assume the responsibility for counsel fees on pre-1970 employment claims.

We have even greater difficulty in believing, on the other hand, that Congress intended to place the burden on the claimants. Such an interpretation of the Act is completely incongruous with its purpose and policy and would require us to assume that Congress intended to impose upon pre-1970 employment claimants a burden that had not existed previously. Our review of the Act in general and its legislative history, although not explicit on this point, convinces us that Congress intended that the pre-1970 employment claimants should not be deprived of part of their benefits.[4] As Chief Justice Marshall remarked in *United States v. Fisher*, 6 U.S. (2 Cranch) 358, 385, 2 L.Ed. 304 (1805): "Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived . . . ."

■ The Secretary's construction necessitates a finding that although the claimant here would have been entitled to payment of counsel fees had not the 1977 amendments intervened, she lost that benefit thereafter. And in the case of a pre-1970 employment claimant whose case is not reached until after April 1, 1978, no counsel fees can be awarded although others who had been fortunate enough to get an earlier adjudication would already have collected such amounts. In the absence of clear and specific language in the statute compelling such a result, we must reject it. The amendments of 1977, after all, were intended to liberalize benefits, not contract them. See 123 Cong.Rec. S.19,497 (daily ed. Dec. 15, 1977) (remarks of Sen. Randolph).

The Fund was created to remove some of the expense of maintaining the Black Lung Benefits program from the government's general revenue as such and divert the liabilities to a fund financed by an earmarked tax on coal. The industry which produces the claims, therefore, bears the burden it creates. It would be inconsistent with this policy to relieve the Fund of the obligation to pay necessary expenses of a successful claimant—his counsel fees—and we do not find ourselves bound to do so.[5]

---

3. The effective date of the amendments to § 934 is April 1, 1978. Revenue Act, § 3(e), 92 Stat. 15.

4. In *Bethlehem Mines Corp. v. Warmus*, 578 F.2d 59, 63–64 (3d Cir. 1978), one of the issues presented was whether the employer should be required to pay counsel fees in a somewhat similar situation. There, however, if benefits were payable to the claimant, the employer agreed that it would pay counsel fees. Bethlehem took the position that "it would then be Bethlehem's duty to pay the fees assessment and apply to the Trust Fund for reimbursement." Brief for petitioner Bethlehem at 4.

Moreover, the operator said whether the employer was entitled to be paid for meeting an award of counsel fees was "not before this Court, however." Brief for Bethlehem at 3. Since the issue underlying the case at bar was not considered by the panel and the disposition in the *Warmus* case was by agreement of the parties, that case is not dispositive of the issues raised here.

5. The Secretary also argues that the appropriation bill to implement the fund contains no specific allocation for payment of counsel fees. This is not surprising since his Department assisted in the preparation of the computations

■ Congress has stated in § 7(a) of the Reform Act that the trustees of the Fund were to be considered as "employers." We do not regard the following proviso, "as the Secretary considers appropriate and as is consistent with the provisions of § 424," to be an open-ended delegation of legislative authority to the Secretary of Labor. His discretion is limited by the qualification that its exercise be consistent with the statutory provision. In the fact situation present here, we construe "employer," for purposes of paying counsel fee awards, to include the trustees.

■ We conclude that in black lung cases arising out of employment terminating before 1970, where the claimant is entitled to counsel fees, these are payable through the Trust Fund and not the employer.[6] Accordingly, the petition for counsel fees directed to the employer Republic Steel Corporation is denied with leave to claimant to submit the necessary documentation to the trustees.

and, consistent with its position that counsel fees were not included, obviously did not make provision for them. We therefore consider this argument bootstrapping and not persuasive.

6. We must also reject the Secretary's contention that 28 U.S.C. § 2412, prohibiting the assessment of counsel fees against the United States, is applicable here. By making the trustees "employers," the Black Lung Benefits Reform Act furnishes a statutory exemption to the section and does not bar fee awards against the Fund, even if the Fund would be considered an agency of the government, a point we need not now decide.