598 F.2d 945
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
BLACK DIAMOND COAL MINING COMPANY, Employer-Respondent,
and
Grover C. Frederick, Claimant-Respondent.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
MOSS & McCORMACK MINING COMPANY, and The Drummond Company,
Employers- Respondents,
and
Elmon Bridgemon, Claimant-Respondent.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
Louis A. PALESTINI, Jr., Claimant-Respondent,
and
United States Steel Corporation, Employer-Respondent.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
MOSS & McCORMACK MINING COMPANY, and The Drummond Company,
Employers- Respondents,
and
Elmon Bridgemon, Claimant-Respondent.
 Nos. 78-3169, 78-3321, 78-3725 and 79-2185.
 United States Court of Appeals,
Fifth Circuit.
 July 11, 1979.
 
 Carin A. Clauss, Sol. of Labor, U. S. Dept. of Labor, Laurie M. Streeter, Associate Sol., Judith E. Wolf, Co-Counsel for Black Lung Benefits, Belva D. Newsome and Kenneth F. Noto, Attys., Washington, D. C., for petitioner.
 
 
 1
 Charles T. Clark, Birmingham, Ala., for Grover C. Frederick.
 
 
 2
 Lange, Simpson, Robinson & Somerville, Harry L. Hopkins, Charles C. Pinckney, Birmingham, Ala., for Black Diamond Coal Co.
 
 
 3
 Anthony L. Cicio, Birmingham, Ala., for Elmon Bridgemon.
 
 
 4
 Bradley, Arant, Rose & White, John H. Morrow, Stephen E. Brown, Birmingham, Ala., for Moss & McCormack and Drummond Co.
 
 
 5
 Trucks, Parsons & Guyton, Fairfield, Ala., for Louis A. Palestini, Jr.
 
 
 6
 W. H. Woolverton, Jr., Fairfield, Ala., James D. Strader, Gen. Atty., Pittsburgh, Pa., for U. S. Steel Corp.
 
 
 7
 Petitions for Review of Decisions of the Benefits Review Board.
 
 
 8
 Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.
 
 ALVIN B. RUBIN, Circuit Judge:
 
 9
 The Director, Office of Workers' Compensation Programs, United States Department of Labor, appeals from decisions of the United States Department of Labor Benefits Review Board holding the Black Lung Disability Trust Fund liable for attorneys' fees incurred by claimants of black lung benefits whose last coal mine employment terminated prior to 1970. The issue is whether such a claimant, his employer or the trust fund is to bear the claimant's attorneys' fees. We conclude that in amending Title IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 901 Et seq., in 1978 Congress did not intend the claimant to bear this cost, which previously would have been borne by his employer. We hold that the Benefits Review Board was correct in assessing these fees against the trust fund.
 
 I.
 
 10
 These consolidated appeals involve similar factual situations. In each case, a claimant of black lung benefits[1] pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended prior to 1978, was found to be entitled to such benefits after a formal hearing. The employer found to be the financially responsible operator appealed the hearing officer's order that it pay the claimant's compensation benefits and attorneys' fees. In 1978, during the pendency of the appeal, the Health and Safety Act was amended by enactment of the Black Lung Benefits Reform Act of 1977, P.L. 95-239, 92 Stat. 95, and the Black Lung Benefits Revenue Act of 1977, P.L. 95-227, 92 Stat. 11. These laws relieved employers of liability for the payment of black lung compensation benefits when the claimant's last coal mine employment predated 1970. Liability for such compensation was transferred to the Black Lung Disability Trust Fund which, prior to the amendments, had been liable for benefits only when a financially liable responsible operator did not exist, or when such an operator refused to pay after its liability was finally determined. Because each of these claimants had last been employed in coal mines before 1970, the Benefits Review Board dismissed the employers from the proceedings and held the Director of the Office of Workers' Compensation Programs, as representative of the trust fund, liable for the claimants' black lung benefits and attorneys' fees.[2] The Board then dismissed the appeals after first allowing the Director twenty days to show cause why they should not be dismissed.
 
 
 11
 The Director contests only the awards of attorneys' fees; he asserts that there is no explicit statutory authorization for such liability on the part of the trust fund and that, absent express mandate that such fees be paid from the fund, either the employer is liable for them or they must be assumed by the claimant. The Director also contends that, even if the trust fund may be liable for attorneys' fees, it should not be assessed with them in these cases because, while the employers contested the claimants' right to black lung benefits, the Director never did so.
 
 II.
 
 12
 The general American rule is not to allow even a successful litigant to recover attorneys' fees unless a statute imposes liability or some other exceptional circumstance warrants a departure from the rule. This rule has also been adopted by the federal courts, precluding the recovery of attorneys' fees in the usual case in the absence of explicit statutory authorization. Alyeska Pipeline Service Co. v. Wilderness Society, 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141. When the defendant is the United States, or an agency of the government, statutory command prohibits the assessment of counsel fees against the federal agency in the absence of an express statutory exception. 28 U.S.C. § 2412. Whether section 2412 is inapplicable here, on the basis that the trust fund is not an "agency" of the United States,[3] we need not decide; we find that there is specific statutory authorization for the award of counsel fees.
 
 
 13
 The statutory tangle is intricate and exhibits some disregard for the usual rules of syntax, let alone clarity, but the snarl can be untangled with care. Section 932(a), 30 U.S.C. as amended prior to 1978, incorporated, in part, provisions of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 Et seq., including 33 U.S.C. § 928(a), which provides for an award of attorneys' fees against the employer. Prior to 1978, the trust fund was held not liable for attorneys' fees under these provisions because it was not an "employer" for the purposes of the Longshoremen's Act. See Republic Steel Corporation v. United States Department of Labor, 3 Cir. 1978, 590 F.2d 77, 80. However the 1978 amendment to section 932(a) specifically substituted the fund's trustees for the "employer" in the incorporated provisions of the Longshoremen's Act. Section 932(a), as amended, provides:
 
 
 14
 During any period after December 31, 1973 . . . the provisions of (the Longshoremen's and Harbor Workers' Compensation Act) shall (except as otherwise provided in this subsection or by regulations of the Secretary And except that references in such Act to the employer shall be considered to refer to the trustees Of the fund, as the Secretary considers appropriate And as is consistent with the provisions of Section 934 of this title ), be applicable to each operator of a coal mine in such State with respect to death or total disability due to pneumoconiosis arising out of employment in such mine . . . . (emphasis supplied to words added in 1978).
 
 
 15
 The Director contends that this section does not specifically authorize payment of attorneys' fees out of the fund because: (1) the substitution of the trustees for the employer is only "as the Secretary (of Labor) considers appropriate," and the Secretary has, in final regulations,[4] rejected such a substitution for the purposes of the attorneys' fee provision; and (2) such payments would not be "consistent with the provisions of section 934."
 
 
 16
 The Third and Sixth Circuits have already rejected these contentions in holding that this section, in conjunction with section 928 of the Longshoremen's Act, specifically authorizes payment of attorneys' fees by the fund. Republic Steel Corporation, supra; Director, Office of Workers' Compensation Programs v. South East Coal Company, 6 Cir. 1979, 598 F.2d 1046.[5] Accord, Director, Office of Workers' Compensation Programs v. Rochester & Pittsburgh Coal Co., 3 Cir. 1979, 594 F.2d 854. The Third Circuit noted that the Benefits Review Board had taken a position contrary to that of the Director by assessing attorneys' fees against the fund in Solarczyk v. Rochester & Pittsburgh Coal Co., 8 BRBS 1026, BRB No. 77-888 BLA (June 30, 1978), Aff'd, Rochester & Pittsburgh Coal Co., supra, and that, because of this conflict, there was no authoritative agency interpretation of the statute to assist the courts. Republic, supra, 590 F.2d at 80. Furthermore, the court stressed that the Secretary's discretion "is limited by the qualification that its exercise be consistent with the statutory provision." Id. at 82. On consideration of the policies underlying these statutes, the court concluded that "employer" should be construed to include trustees of the fund for the purposes of paying counsel fees. We agree with its analysis and conclusions; however we shall briefly discuss our additional reasons for rejecting the Director's renewed arguments that the assessment of attorneys' fees against the trust fund is inconsistent with section 934 and not specifically authorized by section 932.
 
 III.
 
 17
 Decision of the issue presented requires us to interpret texts (the Black Lung Benefits Act,[6] 30 U.S.C. §§ 901 et seq., and portions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 Et. seq.) whose meaning is obscure, a task known to those who seek to understand scripture and literature as hermeneutics, a word derived from the mission of Hermes, the divine messenger between the gods and men.[7] The process by which the secular Hermes interprets a text is necessarily circular: the phrases and words we seek to understand have no distinct meaning until we know how they function in the text as a whole, but we cannot understand the whole meaning without knowing what the parts mean or how they work together. However, students of hermeneutics agree that we must know the whole before we can understand the part. We sought, therefore, the exegesis of the broad congressional intent from the statute as a whole, and our conclusions are based on this analysis.
 
 
 18
 A major purpose of the 1978 amendments to Title IV of the Federal Coal Mine Health and Safety Act was to expedite the flow of benefits to miners. Miners who had last been employed in a coal mine prior to 1970 were having a particularly difficult time in obtaining benefits from their employers. At the time of the amendments, 97 percent of the claims for which the Secretary had determined operator liability were still in the process of litigation. S.Rep.No. 95-336, 95th Cong., 1st Sess. 2 (1977); S.Rep.No. 95-209, 95th Cong., 1st Sess. 7 (1977). Fewer than 200 claims were being paid by operators, while over 2,000 were being paid by the Secretary of Labor. Id.
 
 
 19
 Many employers of pre-1970 employment claimants were able to escape liability because of changes in their corporate structures. S.Rep.No. 95-209, 95th Cong., 1st Sess. 9 (1977). Although Congress believed that the decisions allowing employers to escape liability on this basis were contrary to the intent of Congress and provisions of the Federal Coal Mine Health and Safety Act, Id. at 8-9, it decided to shift the liability for benefits for these claimants from individual employers and the government to the coal mine industry as a whole. The 1977 amendments provided for the creation of a Black Lung Disability Trust Fund that would assume this liability and be funded by an excise tax on coal.
 
 
 20
 While the Senate was considering the Black Lung Benefits Reform Act, Senator Randolph proposed an amendment providing for reimbursement of those few operators who had paid black lung benefits to claimants whose last coal mine employment predated 1970. 123 Cong.Rec. S19496-97 (daily ed. Dec. 15, 1977). He urged its adoption as a matter of fairness because so few employers had assumed this obligation. Id. The amendment, which added subsection (6) to 30 U.S.C. § 934(a), was adopted by the Senate and was a part of the Benefits Reform Act enacted by Congress.
 
 
 21
 Section 934(a) determines the expenditures that may be made from the fund. It does not specifically refer to payment of attorneys' fees, but does authorize the following disbursements, among others:
 
 
 22
 (1) the payment of benefits under section 932 of this title in any case in which the Secretary determines that
 
 
 23
 (A) the operator liable for the payment of such benefits
 
 
 24
 (i) has not commenced payment of such benefits within 30 days after the date of an initial determination of eligibility by the Secretary, or
 
 
 25
 (ii) has not made a payment within 30 days after that payment is due,
 
 
 26
 (2) the payment of obligations incurred by the Secretary with respect to all claims of miners or their survivors in which the miner's last coal mine employment was before January 1, 1970,
 
 
 27
 (6) the reimbursement of operators For amounts paid by such operators (Other than as penalties or interest ) before April 1, 1978, in satisfaction (in whole or in part) of claims of miners whose last employment in coal mines was terminated before January 1, 1970. (Emphasis supplied.)
 
 
 28
 The Third Circuit construed the subsection last quoted ((6) of 934(a)) as authorizing reimbursement of employers for attorneys' fees paid to claimants who were last employed in a coal mine before 1970. Accord, South East Coal Company, supra. The court noted that there was a specific exclusion from reimbursements for "amounts paid" only for "penalties or interest," and that reimbursement for attorneys' fees would equalize the treatment of those employers who had already paid claimants and those who had not. The court then reasoned that, because the employers of claimants whose cases had been decided prior to the 1978 amendments were entitled to recover counsel fees they had paid for claimants, the employers of pre-1970 claimants whose cases had not yet been heard should also be entitled to the government's assumption of liability for attorneys' fees in the absence of clear and specific language in the statute compelling a contrary result.
 
 
 29
 The Third Circuit's basic premise that the "amounts paid" in subsection (6) encompasses attorneys' fees is challenged by the Director, who asserts that the meaning of "amounts paid" is clarified by a comparison with Section 21(c) of the Longshoremen's Act, 33 U.S.C. § 921(c). That section is incorporated into the Black Lung Benefits Act and specifically provides: "(t)he payment of the Amounts required by (a compensation) award shall not be stayed pending final decision" of any appeal. (Emphasis supplied.) The Director notes that the word "amounts" thus used cannot refer to attorneys' fees because fees are not payable until the compensation award has become final. Epstein v. Perini North River Associates, S.D.N.Y.1978.
 
 
 30
 Even if we assume that the word "amounts" has that meaning in a section of the Longshoremen's Act, it does not follow that its meaning in the Black Lung Benefits Act is identical. The term "amounts" is not a word of art, defined and limited; like most words in the English language it has multiple meanings, depending on the context in which it is used. Its meaning in one statute does not necessarily circumscribe its meaning in another. The Director has not shown that Congress intended that the term have a limited and artful meaning in the Longshoremen's Act; the fact that it does not there embrace attorneys' fees is not a result of the word used but of the fact that, under the circumstances, the amounts paid up to a certain time have not included attorneys' fees.
 
 
 31
 The Director contends that the meaning of "amounts" in section 934(a)(6) is limited by Senator Randolph's statement that the effect of his amendment would be "a one-time payment." 123 Cong.Rec. S19497 (daily ed. Dec. 15, 1977). Our interpretation of this provision as encompassing assumption of liability for attorneys' fees is consistent with this statement. The reimbursement or payment of attorneys' fees that were previously part of the liability of employers will be limited to the attorneys' fees of claimants whose last coal mine employment was prior to 1970. Furthermore, the reference in subsection (2) to payment of the Secretary's "obligations" to pre-1970 employment claimants is consistent with the payment of attorneys' fees, as is the reference in subsection (6) to amounts paid in satisfaction of "claims." If Congress had desired to exclude attorneys' fees, it could have drafted subsections (2) and (6) more narrowly by referring to liability for "disability benefits."
 
 
 32
 The Director also suggests that "penalties" includes attorneys' fees, which would exclude attorneys' fees from the "amounts" to be reimbursed. He argues that awards of fees were intended to deter employers from resisting claims.[8] There is no evidence, however, that this provision in the original act was intended to do anything more than ensure that a claimant's benefits were not diminished by the cost of litigation. Such provisions are common in remedial programs.
 
 
 33
 The Director also argues that "amounts" must not encompass attorneys' fees because there is no reference to the payment of attorneys' fees in the legislative history of the 1977 amendments and that of the appropriations for the trust fund. The failure of these materials to refer to attorneys' fees, however, does not show an intent to deny liability for them. As the Third Circuit noted, this argument is to some extent "bootstrapping," because the Department of Labor assisted in preparing the cost or expenditure estimates. Republic, supra, 590 F.2d at 81-2 n. 5. Although Congress used these estimates, it is unlikely that these costs, to be borne by a self-supporting trust fund, were subject to the same scrutiny that would be given to costs to be borne by the government. Also, many requests for funds are made to the Congress that fail to estimate all the costs of the project sought. Moreover, even though we lack the guidance of explicit legislative history on this question, it clearly would not be consistent with the intent of the legislation for such liability to fall on pre-1970 employment claimants or their employers.
 
 
 34
 One purpose of the 1977 amendments was to liberalize benefits for claimants, See S.Rep.No. 95-336, 95th Cong., 1st Sess. 3 (1977); we do not believe that Congress intended to take the right to attorneys' fees away from claimants who had commenced efforts to obtain benefits at a time when the employer would have been liable for those fees. If the fund were held not liable for attorneys' fees, these claimants would have to bring another action against their employers to recover such fees.[9] This additional litigation would be burdensome both for the employer and the claimant. The success of employers before the 1977 amendments in contesting their liability because of changes in their corporate structures suggests that many claimants would lose the later attorneys' fees suit, and would thus have to bear the cost of attorneys' fees. The fact that many employers would probably escape liability is also a reason why Congress probably did not intend liability for attorneys' fees to remain on the employers of pre-1970 employment claimants; this would preserve the unequal treatment of employers that the reimbursement provisions were intended to eliminate by shifting liability to the industry as a whole.
 
 
 35
 The reasons to adhere to the inclusive rather than exclusive interpretation are not so clear as to exclude all doubt. Were there absolute certainty in the statute there would be no litigation about its meaning. Although Congress has not spoken directly on the question before us, we ascribe the meaning more consistent both with congressional intent, as we can derive it from the statute as a whole, and the words Congress chose in the sections dealing with the subject.
 
 
 36
 The Director also contends that an award of attorneys' fees in the cases before this court would be inconsistent with the result in Bethlehem Mines Corp. v. Warmus, 3 Cir. 1978, 578 F.2d 59, in which the court awarded attorneys' fees against the employer. However, as the Third Circuit noted in Republic Steel Corporation, supra, 590 F.2d at 81 n. 4, Bethlehem did not address the issue of the fund's liability for attorneys' fees. In Bethlehem the employer had agreed that, if benefits were payable to the claimant, it would pay the counsel fees; however it had reserved the right to apply to the trust fund for reimbursement if attorneys' fees were awarded against the employer. Further, the parties had agreed that if the fund refused the employer's application for reimbursement, the employer could then challenge the Director's interpretation of the reimbursement provisions of the Black Lung Benefits Act. Thus the court simply awarded attorneys' fees against the employer in accordance with the agreement between the parties.
 
 
 37
 The Director's final sally is that the imposition of attorneys' fees will entail greater obligations than the fund can meet. Neither the record nor congressional history contains satisfactory demonstration of this postulate. The method used to estimate the amount of the charge required to establish the fund did not include attorneys' fees. Whether or not the gross estimate of compensation benefits is accurate remains to be seen. The amount that might be involved in the issue before us is, in any event, relatively small beside that sum. If it proves, however, to be the straw that breaks the fiscal camel's back, Congress can change the amount coal is taxed in order to cover this additional liability; or, if we have misconstrued the legislative intent,[10] it can revise the statute.
 
 IV.
 
 38
 The conditions precedent for a claimant's recovery of attorneys' fees against an employer under 33 U.S.C. § 928(a), incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a), are that: (1) the employer or carrier decline to pay compensation after receiving written notice; and (2) the claimant then utilize an attorney in the successful prosecution of the claim. The Director asserts that these conditions were not met in these cases because he did not contest the claimant's right to benefits. Republic, supra, is alleged to be distinguishable because in that case the United States Department of Labor had denied the claim at the administrative level on the basis of untimely filing (a survivor's claim was involved), and the Director had opposed the claim at the hearing and on appeal to the Benefits Review Board. This argument and attempted distinction lack merit.
 
 
 39
 It is consistent with the language of 30 U.S.C. § 932(a) to hold that the fund stands in the shoes of the employer for the purposes of the attorneys' fee provision in 33 U.S.C. § 928(a). As the Sixth Circuit held in South East Coal Co., supra, 598 F.2d at 1046 n. 1, the condition precedent to recovery of attorneys' fees is a contest of liability, not that it be by the Director. In each case here the employer contested liability, and the claimant therefore utilized an attorney to prosecute his claims. Thus each claimant has satisfied the conditions precedent for its "employer's" assumption of liability for attorneys' fees.
 
 
 40
 In Director, Office of Workers' Compensation Programs v. Rochester & Pittsburgh Coal Co., supra, the Third Circuit reached a similar result, although it did not discuss this issue. In that case, the Director had not contested the claimant's right to disability benefits but the employer had done so. Even though the Director contended that the fund therefore was not liable for attorneys' fees, the court summarily affirmed their award against the fund.
 
 V.
 
 41
 In his brief, the attorney for claimant Palestini requests an additional fee of $1200 for his work before this court and before the U.S. Department of Labor Benefits Review Board. The request for an additional fee for work before the Benefits Review Board is not appropriate for our consideration; it must first be ruled upon by that board. 33 U.S.C. § 928(c)[11]; 43 Fed.Reg. 36788 (August 18, 1978) (to be codified at 20 C.F.R. § 725.366(a)). See Ayers Steamship Co. v. Bryant, 5 Cir. 1977, 544 F.2d 812, 814. We may properly entertain the request for an additional fee for work before this court,[12] See id., but clarification of the services rendered and other information is necessary before we can rule on it.
 
 
 42
 Section 928(c), 33 U.S.C., of the LHWCA offers no guidance concerning the standard a court of appeals should apply in determining the amount of an attorney's fee, and does not set forth the procedure that should be followed in applying for a fee. However, in Ayers Steamship Co., supra, 544 F.2d at 814, we adopted as our own "fair and appropriate procedures" previously outlined by the Third Circuit. Those procedures specify that an essential element of every application for attorney's fees is "(d)isclosure of the hours devoted to each category of work in connection with the appeal and the reasonable hourly rate for the person performing the work." Id. quoting Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs, 3 Cir. 1976, 542 F.2d 602, 610. The itemization of hours worked must also be verified. Id.
 
 
 43
 Under these standards, Mr. Palestini's attorney's fee request is not sufficiently detailed. It seeks $1000 for work before this court, which is alleged to have consisted of 20 hours of work in preparing the claimant's brief. However the request does not break down this figure into the hours spent on research and those taken to write the brief, nor does it specify the reasonable hourly rate(s) for the person(s) performing the work. In addition to this information, this application requires further clarification of the work performed. Because the claimant's brief is three pages long, with only one page of argument, and is bare of citation to legal authority, it does not appear that strenuous research or writing was required. The brief does not reflect, on its face, twenty hours of effort, but it may be that Mr. Palestini's attorney can explain this.
 
 
 44
 For the foregoing reasons, the decisions of the Benefits Review Board are AFFIRMED. Mr. Palestini will be given twenty (20) days from the publication of this opinion to resubmit his motion with the information outlined above. The Director will be given an additional twenty (20) days to respond by brief and by affidavit if he deems such response appropriate. It is so ordered.
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 Mr. Bridgemon sought medical benefits only whereas Mr. Palestini and Mr. Frederick sought compensation benefits, but this distinction does not affect our analysis
 
 
 [2]
 Case No. 78-3321 involves a claim for counsel fees in connection with representation before the hearing officer. Case No. 79-2185 involves a claim for counsel fees for representation of the same claimant, Mr. Bridgemon, before the Benefits Review Board. This distinction does not affect our analysis or conclusions
 
 
 [3]
 The fund is an account established by Congress on the books of the United States Treasury. It is derived from an excise tax on coal and is for the specific and limited purpose of paying black lung compensation, reimbursement and administrative expenses. However federal funds have been provided for implementation of the trust fund. Federal agencies or corporations may not be comparable to the limited purpose Black Lung Disability Trust Fund created by the Black Lung Benefits Reform Act of 1977 and the Black Lung Revenue Act of 1977
 
 
 [4]
 20 C.F.R. §§ 725.365 and 725.367. See also 43 Fed.Reg. 36789 (August 18, 1978)
 
 
 [5]
 The Sixth Circuit's reasoning in South East Coal Co., supra, was similar to that of the Third Circuit in Republic, supra, although less detailed
 
 
 [6]
 The provisions of the Federal Coal Mine Health and Safety Act concerning black lung benefits were titled the "Black Lung Benefits Act" when the act was amended in 1972
 
 
 [7]
 Like any other interpreter of sacred messages, Hermes conveyed the hidden meaning in terms ordinary people can understand. "In fact, even the word 'interpreter' comes from Interpres, which was the usual epithet for Mercury, the Roman Hermes." E. D. Hirsch, Jr., Carnal Knowledge: A Review of The Genesis of Secrecy: On the Interpretation of Narrative, by Frank Kermode, The New York Review of Books, June 14, 1979, p. 18. I have drawn on Hirsch's explanation of hermeneutics in the remainder of this paragraph
 
 
 [8]
 It can be argued that Congress intended to reimburse employers who had previously paid attorneys' fees, but that it did not intend to relieve employers of that liability when they had not paid benefits prior to the 1977 amendments. The problem with this argument is that some employers may not have paid such benefits because a claim had not been filed or a final decision not reached, rather than in defiance of an order. In addition, Congress clearly did not intend for this obligation to fall on the claimant
 
 
 [9]
 The employers in the appeals here would be entitled to litigate this issue because no final determination has been made concerning their liability; they were dismissed from the proceedings before the Benefits Review Board before a final decision was made on this point
 
 
 [10]
 Hermeneutics necessarily can ascertain only probability, not certitude
 
 
 [11]
 Section 928(c), 33 U.S.C., is incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932 and provides, in part:
 In all cases fees for attorneys representing the claimant shall be approved in the manner herein provided. If any proceedings are had before the Board or any court for review of any action, award, order, or decision, the Board or court may approve an attorney's fee for the work done before it by the attorney for the claimant.
 
 
 [12]
 The claimant waived oral argument. Under these circumstances, we do not think it necessary for the claimant's attorney to await our decision before setting forth those considerations that he believes should govern the amount awarded. Normally, however, a request for a specific fee should await our consideration of the merits of the appeal. See Ayers Steamship Co., supra, 544 F.2d at 814; Atlantic & Gulf Stevedores, Inc. v. Dir., Office of Workers' Comp. Programs, 3 Cir. 1976, 542 F.2d 602, 610