Virginia KEPHART, Widow of Raymond
Kephart, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNIT-
ED STATES DEPARTMENT OF LA-
BOR, Respondent.

No. 82–3126.

United States Court of Appeals,
Third Circuit.

Argued Nov. 16, 1982.

Decided Feb. 25, 1983.

John R. Carfley (argued), Philipsburg,
Pa., for petitioner.

T. Timothy Ryan, Jr., Sol. of Labor, Don-
ald S. Shire, Associate Sol., J. Michael
O'Neill, Counsel for Appellate Litigation,
David V. Bernal (argued), Atty., U.S. Dept.
of Labor, Washington, D.C., for respondent.

Before GIBBONS, HIGGINBOTHAM
and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Petitioner Virginia Kephart seeks re-
view [1] of an order of the Benefits Review
Board ("BRB") of the Department of Labor
dismissing her claim for black lung benefits
filed under Title IV of the Federal Coal
Mine Health and Safety Act of 1969, 30
U.S.C. §§ 901–902, 921–924, 931–936

1. This Court has jurisdiction pursuant to 33     U.S.C. § 921(c) (1976).

(1976).[2] The BRB entered the dismissal sua sponte because it apparently deemed petitioner to have abandoned her claim when she failed to timely file a Petition for Review and supporting brief in her appeal from an adverse decision of an administrative law judge. Although the BRB has the discretion to so construe such a failure, we find that the BRB abused its discretion in this case. We therefore will reverse and remand for further proceedings.

## I.

On May 12, 1970, Raymond Kephart (petitioner's husband) filed a claim for black lung benefits with the Social Security Administration of the Department of Health, Education and Welfare.[3] Kephart's claim was denied on June 1, 1973; on May 16, 1974, Kephart died of pneumoconiosis (black lung disease). Four days after her husband's death, petitioner Virginia Kephart filed a new claim for benefits. This claim was informally denied by the Department of Labor on December 3, 1976.

On March 19, 1978, petitioner requested that the Social Security Administration review her husband's claim. The Administration again denied this claim on March 26, 1979, and subsequently transferred Kephart's file to the Department of Labor, where the two claims were joined for further consideration.

After initial review, the Department of Labor denied both claims on March 10, 1980. The Department found insufficient evidence of record to establish entitlement to benefits, even under the liberalized standards included in the 1977 amendments to the Act. Petitioner then requested a formal hearing before an administrative law judge ("ALJ").[4]

The ALJ held a formal hearing on November 6, 1980, and issued a Decision and Order on March 11, 1981, rejecting petitioner's claims.[5] Petitioner then filed a timely notice of appeal with the BRB on March 30, 1981, and on June 5, 1981, the BRB sent petitioner a letter of acknowledgment. That letter, in addition to instructing petitioner's counsel to file a Petition for Review and supporting brief within thirty days, directed counsel's attention to two of the Board's Rules of Practice and Procedure, 20 C.F.R. §§ 802.210 and 802.215.

By October 1, 1981, the BRB had not yet received petitioner's petition and brief; it therefore ordered her to show cause why her appeal should not be dismissed. Petitioner's counsel responded on October 9. Offering no excuse for his tardiness, counsel instead noted that petitioner and her late husband had diligently prosecuted the claims and complied with applicable procedures since 1970, argued that the BRB would not be substantially prejudiced by petitioner's failure to file her brief within thirty days, and pointed out that the BRB had never before dismissed an appeal for failure to comply with the filing deadline. The response also requested an additional thirty days for petitioner to file her brief.

On October 30, 1981, the Director of the Office of Workers' Compensation Programs of the Department of Labor (respondent

2. Originally adopted in 1969, the Act was substantially amended by the Black Lung Benefits Act of 1972, Pub.L. No. 92–303, 86 Stat. 150 (1972); the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95 (1978); and the Black Lung Benefits Amendments of 1981, Pub.L. No. 97–119, 95 Stat. 1635 (1981). The 1977 amendments retitled the Act the Black Lung Benefits Act.

3. Although all claims for black lung benefits are now processed by the Office of Workers' Compensation Programs of the Department of Labor, see 30 U.S.C. § 931–934 (1976), claims filed before July 1, 1973, were processed by the Social Security Administration of the Department of Health, Education and Welfare (now the Department of Health and Human Services), see id. §§ 921–925.

4. The preceding history is described in respondent's brief and is reflected in the record developed by the ALJ.

5. Specifically, the ALJ found that Raymond Kephart had not been a coal miner for a period long enough to entitle petitioner to invoke the statutory presumption that Kephart's pneumoconiosis resulted from coal-mine employment. Without the aid of that presumption, the ALJ found, petitioner could not prove such causation. See App. at 37–38.

here) filed a reply in which he argued that petitioner's response to the order to show cause was insufficient. The Director first highlighted the fact that petitioner had given no reason for failing to file her petition and brief within thirty days. He then contended that

> while the regulations in effect *prior* to 1978 provided that the failure to timely file a paper could, in the discretion of the Board, constitute a waiver of the right to further participation in the proceedings, 20 C.F.R. § 802.217 (1978), the applicable regulations, as amended, specifically contemplate that the Board will dismiss an appeal rather than apply such a lesser sanction where no valid cause is shown for the failure to timely submit the petition for review and brief. 20 C.F.R. § 802.217(b) (1981).

Respondent's Brief at 6.

Although petitioner eventually submitted her petition and brief on January 4, 1982 (eighty-seven days after her request for a thirty-day extension), the BRB filed an order dismissing the appeal on January 29, 1982. The opinion accompanying the order was conclusory: following a brief recitation of the procedural history subsequent to the filing of petitioner's notice of appeal, the BRB dismissed simply because "claimant ha[d] not shown valid cause for the failure to file a timely Petition for Review and brief, . . . 20 C.F.R. §§ 802.217, 802.402 [1981]." App. at 1, 2.

## II.

### A.

The rules of practice and procedure of the BRB are codified at 20 C.F.R. § 802.-101–.411 (1982). The portions of those rules relevant to this appeal provide as follows. First, a notice of appeal from an order of an ALJ must be filed within thirty days. "Failure to file within the period specified . . . shall foreclose all rights to review by

the Board with respect to the case or matter in question. Any untimely appeal will be summarily dismissed by the Board for lack of jurisdiction." [6] *Id.* § 802.205(a), (c).

Once the BRB has received the notice of appeal, the clerk of the BRB must acknowledge the notice "as expeditiously as possible." [7] *Id.* § 802.209. The petitioner then has thirty days from receipt of the acknowledgment to submit a petition for review. *Id.* § 802.210(a). That petition, which must be accompanied by a supporting brief, *id.* § 802.210(b), "shall contain a statement indicating the specific contentions of the petitioner and describing with particularity the substantial questions of law or fact to be raised by the appeal," *id.* § 802.210(a). "Failure to submit a petition for review within the 30-day period described in this section may, in the discretion of the Board, cause the appeal to be deemed abandoned (*see* § 802.402)." *Id.*

■ Despite the suggestion contained in the language of section 802.210, the BRB cannot deem an appeal to be abandoned immediately upon the passing of the thirty-day deadline. Rather, "[w]hen a petition for review and brief has not been submitted to the Board within the time limitation prescribed by § 802.210, . . . the petitioner shall be ordered to show cause to the Board why his or her appeal should not be dismissed pursuant to § 802.402." *Id.* § 802.-217(b).

Finally, section 802.402 provides: "[U]pon the Board's own motion, an appeal may be dismissed upon its abandonment by the party or parties who filed the appeal. Within the discretion of the Board, a party may be deemed to have abandoned an appeal if neither the party nor his representative participates significantly in the review proceedings." *Id.* § 802.402(a).

### B.

As noted above, the BRB did not find explicitly that petitioner had abandoned her

---

**6.** Neither the BRB nor the respondent has suggested that petitioner's notice of appeal was untimely.

**7.** Although we do not suggest that petitioner was in any way misled about the need for expediency, we note that the BRB took more than two months to acknowledge petitioner's notice of appeal.

appeal; it merely stated that she had failed adequately to excuse the tardiness of her Petition for Review. We nevertheless assume that the BRB based its dismissal on an abandonment theory because its opinion cited section 802.402 and because we can find no other rule under which the BRB could have dismissed petitioner's claim at this stage of the proceedings.[8]

Respondent Director argues that petitioner's course of conduct following the filing of her notice of appeal constituted a failure to "participate[] significantly in the review proceedings" sufficient to sustain a finding of abandonment. In particular, the Director points to petitioner's response to the BRB's order to show cause and notes that "petitioner did not cite 'inadvertence,' 'oversight,' or any other reason for the failure to timely file her papers." Respondent's Brief at 11. He concludes that "the Benefits Review Board, if not given an adequate excuse or reason [for the failure to timely file a brief], may find that the petitioner has not 'participate[d] significantly in the review proceedings' and properly dismiss an appeal before it." *Id.* at 10–11.

■ The Director correctly characterizes petitioner's response to the Order to Show Cause. He also accurately describes the BRB's power to make a finding of abandonment if "neither the party nor his representative participates significantly in the review proceedings." But the BRB is not required to do so; indeed the rule states explicitly that a failure to participate "*may* be deemed" abandonment at the discretion of the Board.

■ In this case, neither petitioner's failure to timely file her Petition for Review nor her failure to provide an excuse for that omission would suffice, either alone or together, to sustain the BRB's decision to deem petitioner's appeal abandoned.[9] First, the representation of petitioner's counsel in his response to the Order to Show Cause that he would file the petition and brief within thirty days strongly suggested that petitioner did not intend to abandon her appeal.[10] More importantly, a finding of abandonment does not comport with petitioner's dogged pursuit of her claims. Petitioner's husband originally filed his claim eleven years before the denial was appealed to the BRB. The additional claim filed by petitioner has been pending for seven years. There is nothing in the record to suggest, nor did the BRB find, that petitioner's participation had ever been less than timely, cooperative, or complete. It would be inconsistent with the spirit of the Act, as well as the liberality with which it is to be construed,[11] to allow this one instance of unexplained tardiness[12] to defeat the clear intention petitioner's overall course of conduct.[13]

8. We note, however, that it is preferable for the BRB to make clear findings on such matters.

9. Although we assume that a finding by the BRB that petitioner had failed to participate significantly in the review proceedings would be sustained if supported by significant evidence on the record as a whole, *see, e.g., Schaaf v. Matthews,* 574 F.2d 157 (3d Cir.1978) (standard of review of denial of black lung benefits is whether decision is supported by substantial evidence), we use an "abuse of discretion" standard to review the BRB's decision to construe such an alleged failure as an abandonment.

10. Although papers were not actually filed for eighty-seven days, they were filed three weeks before the BRB dismissed the appeal.

11. *See, e.g., Director, Office of Workers' Compensation Programs v. Black Diamond Coal Mining Co.,* 598 F.2d 945 (5th Cir.1979).

12. We recognize, of course, that the BRB should retain the greatest leeway possible to control its own docket. We also recognize that the failure to file a petition for review with the BRB is analogous to the failure to file a brief with an appellate court—a failure that frequently justifies dismissal of an appeal. We therefore do not suggest that dismissal for failure to timely file a petition for review is *never* appropriate; indeed it would fly in the face of the regulations so to hold. Nor do we suggest that the BRB could not promulgate a rule that would authorize the kind of automatic dismissal that took place here.

13. The nature of petitioner's underlying claim adds to our discomfiture with the BRB's dismissal. The record is clear that Kephart died of pneumoconiosis, App. at 37; the only question is how he contracted the disease. The ALJ found that Kephart had worked in coal mines for only one year and had spent the rest of his

Because we conclude that the BRB abused its discretion in deeming petitioner's claim abandoned, we will vacate the BRB's dismissal and remand for further proceedings.

working years at various clay mines. *Id.* Because petitioner could not prove that her husband's pneumoconiosis resulted from his coal mine employment, she could not sustain her claim for benefits.

There are two troubling aspects to the ALJ's decision. First, the ALJ rejected petitioner's proffer that her husband had told her that he had worked in coal mines from the time he was thirteen until he was twenty-six. While the ALJ's finding is undoubtedly entitled to some deference, the disputed issue of fact makes some review desirable.

Second, petitioner's appeal to the BRB apparently presents a novel question under the Black Lung Benefits Act. The ALJ noted in his opinion that Kephart died of pneumoconiosis after spending

> twenty years as a underground clay miner, five years working on the tipple in the clay mine and twenty-one years as a clay mine foreman. Throughout those years he was exposed to substantial amounts of coal dust in the process of extracting clay, as that process involves the removal of coal seams in order to get to the clay.
>
> Those years, however, were spent in mines whose primary purpose was the extraction of clay, coal being but a by-product, unused by the company. As those years were not years of coal mine employment, Claimant has the burden of proving that the decedent's pneumoconiosis arose out of his one year of coal mine employment as opposed to his 46 years of working as a clay miner. There is nothing in the record to indicate this was the case. It is a difficult burden of proof, which has not been met. Consequently, benefits must be denied.

App. at 38. The apparent novelty of the issue whether benefits are available for one who contracts pneumoconiosis from exposure to coal seams in a clay mine, coupled with the lengthy period it has taken to have this issue authoritatively adjudicated, makes dismissal on a technicality undesirable.